## GERALD, ADM'R. *vs.* MILLER'S DISTRIBUTEES.

1. Where a bill is filed by the distributees of an estate against the administrator, to set aside a transfer which he had fraudulently obtained from them of their interest, and to recover their distributive shares, his securities on his official bond may be joined as defendants.

2. Neither the administrator, nor his securities can complain in such case that no decree, except for costs, is rendered against the sureties.

3. An objection to the master's report, which is not on its face erroneous, cannot be raised for the first time in the Appellate Court, no exception having been taken to it in the court below, and no objection there made to its confirmation.

ERROR to the Chancery Court of Monroe.

Tried before the Hon. J. W. LESESNE.

This was a bill filed by Wm. Miller and the other complainants as the heirs at law and next of kin of Simon Miller, deceased.

The bill alleges, that Simon Miller died in the county of Monroe, in the year 1847, possessed of an estate of the value of $2,000, or upwards; that administration of his estate was first committed to one Bell; that the complainants are his heirs at law and next of kin; that sometime in the year 1847, after the death of the said Simon Miller, the defendant Gerald came to South Carolina where the complainants reside, and informed them of the death of said Simon, and by representing that he had left but little property, and was much in debt, induced them to sell to him their entire interest in the estate of their deceased uncle for $100, and procured from them a written transfer of their interest. This, they allege, was done falsely and fraudulently; that, after the return of Gerald to Alabama, the said Bell, who had been previously appointed administrator of Simon Miller, re-

signed, and the said Gerald procured himself to be appointed administrator *de bonis non* in his place. Nathan Gerald and the securities on his administration bond, John W. Foster and Wm. W. Hunt, are made defendants to the bill.

The bill prays, that the transfer to Gerald of the interest of complainants in their uncle's estate may be declared void for fraud, and that it may be directed to be given up to be cancelled; and that the said Gerald, as administrator of Simon Miller, may be required to settle said estate, and pay over to the complainants their respective distributive shares. The estate of Simon Miller consisted of personal property only.

The bill was answered by Gerald and Hunt, and a decree *pro confesso* was taken against Foster. The answer of Gerald denies that the complainants are heirs at law, or next of kin of Simon Miller; denies all fraud or imposition in procuring the transfer from complainants; admits that it was for the sum of $105; and offers, upon being paid back that sum with interest, to surrender up and cancel the transfer, and relinquish all interest under it.

He admits that he was appointed administrator *de bonis non* of Simon Miller, and alleges that he has made final settlement of said estate with the Orphans' Court of Monroe, and that upon such final settlement the assets found to be remaining in his hands were $2,130\frac{23}{100}$, for which sum alone he should be held to account. He demurs to the bill, for the misjoinder of Foster and Hunt, his securities, as defendants.

The answer of Hunt is a formal answer merely. He also demurs to the bill for want of equity, and because of improper parties.

The testimony shows, that the complainants were the cousins of Simon Miller, deceased: children of his mother's brother Sam'l. Miller. His mother was named Sally Miller, daughter of Wm. Miller, and had six brothers and sisters. They resided in MarionDistrict, S. C. All these brothers and sisters were dead, or had moved away, and had not been heard of for a great many years, (the old witnesses say forty and fifty.) None left children that were known, except Samuel Miller, and they were the complainants, six in number, all of age, and the minor children of one deceased sister. Sev-

eral old witnesses, in that part of South Carolina where Simon Miller was born and raised, and who knew him and his family well, testify, that they know of no relations of Simon Miller so near of kin as these cousins, the children of his uncle Samuel Miller.

The testimony of several of the witnesses goes to show, that fraud was practiced by Gerald in procuring the transfer; that these persons were very ignorant, and knew nothing except what he told them about the property of Simon Miller, and that he represented the estate to be in debt, and the property of small amount. The money paid by Gerald was paid back to him by complainants, agreeably to his offer in his answer.

The Chancellor, at the hearing, decided, 1. That the complainants were the next of kin of Simon Miller, deceased;

2. That the transfer from them to Gerald should be cancelled and held for nought ;

3. That Gerald, as administrator *de bonis non*, should be held to make distribution of the assets in his hands among the complainants as the next of kin of Simon Miller; and for the purpose of ascertaining the amount of assets, the register is directed to take and state an account with the defendant Gerald, agreeably to the rules which prevail in the Courts of Probate.

Pursuant to this order, an account was taken by the register, by which he found against Gerald, as administrator *de bonis non*, a nett balance of $1,584$\frac{55}{100}$, in his hands liable to distribution, besides two negro slaves, (men,) Webster and Anthony.

The report of the register was confirmed by the Chancellor, no exceptions being taken, and a decree rendered in favor of each of the distributees now living, and of Rufus C. Tony, the administrator of a deceased distributee, for the sum of $226$\frac{36}{100}$, and execution in favor of each directed to issue against Nathan Gerald; and it was further decreed, that Gerald should expose to public sale the two slaves for cash, and make report of the sale and return of the proceeds to the next term of the court. And "it was further ordered, that each party should pay his own costs."

The errors assigned are:

1. That the court below erred in not sustaining demurrer for misjoinder of Foster and Hunt;

2. In not rendering decree against them, or dismissing the bill as to them;

3. In confirming report of the master;

4. In decreeing in favor of the complainants on the proof.

C. C. SELLERS, for plaintiffs in error.

R. C. TORREY, *contra.*

PHELAN, J.—Whenever it becomes necessary to proceed in equity against an administrator, for the recovery of a debt, legacy or distributive share, all the obligors in the administration bond may be made parties. Moore et al. v. Armstrong, 9 Por. 697.

It is quite clear, that these complainants had the right to go into a court of equity to have the transfer they made to Gerald set aside; and as they were suing for their distributive shares of the estate of their uncle, of which he was administrator, in the event they succeeded in having that set aside, it was proper to join his sureties on his administration bond, Foster and Hunt.

That no decree is rendered against them, except for costs, is a matter of which they cannot complain; nor can Gerald complain.

The decree upon the merits, is well warranted by the proof. See statement of the testimony.

No exception was made to the report of the master, nor any objection raised to the confirmation of that report in the court below, and, therefore, none will be heard for the first time in this court, the report not being erroneous on its face. Methodist E. Church v. Jaques, 3 John. C. 77; 2 Smith's C. Prac., 370; 9 Por. 80; 9 Ala. 180.

There is no error in the record, and the decree of the court below is affirmed.