## DAILY *vs.* BURKE.

[QUESTION OF PRIORITY BETWEEN JUDGMENT CREDITORS.]

1. *Construction of 12th section of Code.*—The term "proceeding", as used in the
12th section of the Code, which declares that "no action, or proceeding",
commenced before its adoption, shall be affected by any of its provisions,
does not include a judgment, which is an entire act,—an act which cannot,
in any proper sense, be said to be "commenced" before a certain day.
2. *Lien of judgments on land.*—The provision of the Code (§ 2456), which makes
a judgment a lien on the real estate of the debtor only from the time of the
delivery of an execution to the sheriff, applies to judgments rendered before
its adoption.

APPEAL from the Circuit Court of Tuskaloosa.
Tried before the Hon. GEO. D. SHORTRIDGE.

The sheriff of Tuskaloosa county having applied to the cir-
cuit court for instructions how to apply certain moneys in his
hands, the proceeds of the sale of lands levied on as the prop-
erty of James M. Dunlap, by virtue of two executions, one in

favor of Thomas J. Burke, which was issued on a judgment rendered on the 25th September, 1850, and the other in favor of Robert Daily, by his next friend, which was issued on a judgment rendered on the 1st October, 1853; thereupon came the said Burke and Daily, by their attorneys, and each claimed the money. "The attorney of said Burke proved to the court, that he recovered a judgment rgainst said Dunlap, in the year 1850, at the September term of the circuit court of said county; that he caused an execution to be issued on his said judgment, within the year and a day after said judgment was rendered, which went into the sheriff's hands, and was by him returned 'no property found'; that no other execution was issued on said judgment, until the 15th day of January, 1855, which was received by the sheriff of the county on the next day. The attorney of Robert Daily, by his next friend, proved that he recovered judgment against said Dunlap, at the October term of said court, 1853; that an execution was issued on said judgment, within the year and a day, and went into the hands of the sheriff of said county, and was by him returned no property found; that he caused an *alias* execution to be issued on his said judgment, on the 2d day of November, 1854, which went into the hands of said sheriff on the same day. It was further proved that the executions of said Burke and Daily were both levied on the lands of said defendant in execution, which were duly sold for the money mentioned in the said sheriff's motion." "On this evidence, the court decided that the said Burke was entitled to said money in the hands of the sheriff, and that his judgment was a lien on said lands up to the said sale." Daily excepted to this decision of the court, and he now assigns it as error.

E. W. PECK, for the appellant:—The lien of Burke's judgment on Dunlap's land was lost by the adoption of the Code. The acts of 1807 and 1812, by which such liens were created, were repealed by the Code.—Stephenson v. Doe, 8 Blackf. 508; 5 English, 588; Code, §§ 10, 2422, 2456. These acts being repealed, the Code alone must be looked to, to determine the rights of the parties; and by it the appellant's claim is superior to that of the appellee.

22

ORMOND & NICOLSON, *contra:*—1. Burke, having issued execution within the year and day, was not bound to keep it up from term to term, in order to make the lien of his judgment effectual on the lands of the defendant in execution. It was enough that he had a subsisting judgment and execution in the sheriff's hands at the time of the sale of the land.—Turner v. Lawrence, 11 Ala. 426.

2. Judgments, obtained since the adoption of the Code, are not liens on real or personal estate: to constitute a lien, there must be an execution in the hands of the sheriff. But this applies only to judgments obtained since the adoption of the Code, and not to those previously rendered. What was the intention of the framers of the Code, in this regard, and how far have they respected former judgments? was it intended that they should be put upon the same footing with judgments since obtained? Section 2419 provides the rule as to the issue of executions, and the time within which a *scire facias* is necessary to revive them; and the term of prescription, as to all judgments obtained under the Code, is ten years. But section 2420 excepts *existing judgments from this* prescription, and the next section gives them twenty years. The Code thus not only recognizes existing judgments, but puts them upon higher ground than those obtained since its adoption. If authority be thus given to issue an execution on an existing judgment after the lapse of ten years, to what does this refer itself? Does it not refer back to the judgment as it was at the time of its rendition, and when it was a lien on lands? The title by which they are designated, "existing judgments", is a recognition of their legal efficacy, for their very existence could only be by virtue of the former law. As to the relation of execution and judgment, see Conard v. Atlantic Insurance Co., 1 Peters, 386, 443.

Again, the 12th section of the Code declares, that "no action, or proceeding", commenced before its adoption, is affected by its provisions. The appellee had taken all the steps necessary to effectuate his lien on the lands of his debtor, and his rights had become perfect under the old law. The term "proceeding" is one of the largest legal signification, and implies not only all means by which the primary power of the law may be set in motion, but all the interme-

diate steps between the initiation and termination of a cause in court.—Amis v. Smith, 16 Peters, 313; Webster's Dictionary.

As to the effect of repealing statutes, and the hesitancy of courts to give them a retroactive operation, see 5 Hill, 221; 1 Kent's Com. 463. As to the effect of subsequent enactments on past judgments, see 7 How. 760; 7 Johns. 478; 12 Barb. 585; 13 B. Mon. 19.

GOLDTHWAITE, C. J.—By the old law, a judgment was a lien upon the lands of the defendant; but by section 2456 of the Code, lands are placed upon the same footing with personal property, and are bound only from the delivery of the execution to the officer. In the present case, the only question is, whether the law of the Code, in this respect, applies to judgments which were rendered before its adoption.

The right of the legislature to exempt lands from the lien of existing judgments, is not questioned; and, as there is an express repealing clause (§ 10) of all acts of a public nature not embraced in the Code, it is clear that the effect of this, standing alone, would be to repeal any previous statute which made judgments a lien upon lands. We do not understand this proposition to be denied; but it is urged, that the effect of the repealing clause is broken by section 12, which provides that "no action, or proceeding, commenced before the adoption of the Code, shall be affected by its provisions"; that a judgment is a proceeding, within the meaning of this section; and that consequently, if rendered before the Code took effect, it is not affected by it. We think, however, that the term, as there used, must be confined to a proceeding that is continuous in its character—pending, and not terminated, when the Code went into operation. The use of the word "commenced" shows, we think, very clearly, that the section referred to was never intended to embrace a judgment, which is an entire act,—an act which could not, in any proper sense, be said to be "commenced" before a certain day.

It may be necessary briefly to notice the argument of the appellee, based upon sections 2419 and 2420 of the Code. The effect of the first of these sections is, to require a *scire facias* to revive a judgment on which an execution has not

been sued out within a year after its rendition, or within ten years after the date of the last execution; and in the last case, the failure to issue the execution, within the prescribed period, is presumptive evidence of the satisfaction of the execution. It is supposed by the counsel for the appellee, that, as judgments existing when the Code took effect are exempted from the operation of this section by the terms of section 2420, such judgments would have the same liens as when rendered; but we cannot admit the sequence. Under the old law (Clay's Digest, 206–7, § 28), the failure to issue execution for ten years, rendered it necessary to revive the judgment, (Van Cleve v. Haworth, 5 Ala.; Collins v. Boyd, 14 Ala. 505); but such failure raised no presumption of payment, except so far as to bar the issue of execution without a *scire facias;* and the main distinction between the law of the Code and the old law, was in the effect which the failure to issue execution had as evidence. The main object of section 2420 was, to secure judgments rendered before the Code took effect, upon which no execution had issued for ten years, against a presumption which attached to judgments rendered since the Code upon the same failure. But it was not intended to go beyond this, and to give to the first class of judgments, when revived, a force and effect superior to that which they would have possessed had they been rendered after the Code went into operation.

Judgment reversed, and cause remanded.