## IRVINE, Adm'r, *vs.* ARMISTEAD.

[BILL IN EQUITY BY WIDOW, PRAYING TO HAVE DOWER ASSIGNED IN LANDS OF WHICH THE HUSBAND WAS SEIZED IN FEE DURING COVERTURE, BUT WHICH WERE SOLD UNDER EXECUTION ON JUDGMENT OBTAINED PRIOR TO THE MARRIAGE.]

1. *Judgment; what not such a lien as defeats widow's right of dower.*—A judgment of a circuit court, rendered on the 16th day of September, 1861, on which an execution was issued within the year after its rendition and returned unsatisfied, and upon which judgment no other execution was issued until September, 1865, is not a lien on the lands of a defendant in said judgment, which will defeat his widow's right of dower in his dowable lands, when the marriage with such defendant took place on the 29th day of November, 1862, and after the rendition of such judgment.

2. *Same; what no bar to right of dower.*—A sale of such defendant's dowable lands under execution on such judgment, and the conveyance of the same to the execution purchaser by the sheriff in 1866, is no bar to the widow's dower.

3. *Same; purchaser at execution sale under such judgment; for what is liable.*—The purchaser under such sale, or his administrator, is liable, if he resists the widow's application for dower in such lands, to account to her for the mean profits of such dower lands from the death of the husband, by way of damages, during the tenancy of the same.

4. *Chancery, courts of; of what have original jurisdiction.*—The chancery courts of this State have original jurisdiction to entertain suits for dower concurrent with the courts of law, especially where there is a purchaser under execution title in possession of the lands at the death of the husband, and there is necessity for an account for mean profits, by way of damages, between the tenant of the lands and the claimant of the dower interest.

APPEAL from Chancery Court of Lauderdale.
Heard before Hon. WILLIAM SKINNER.

THE case made by the bill and answers may be briefly stated as follows :

On the 16th day of September, 1861, Brickell obtained a judgment in the circuit court of Lauderdale, against George G. Armistead and others for $1164 and costs. Execution was issued on this judgment on the 27th day of

September, 1861, and returned unsatisfied. On the 29th day of November, 1862, George G. Armistead intermarried with the complainant in the court below. In 1865, an *alias* execution, and the only one issued after the 27th day of September, 1861, was placed in the hands of the sheriff, who levied it upon the lands of said Armistead and sold the same early in October, 1866, to James B. Irvine. Irvine paid the purchase-money, received the sheriffs deed, and on the 6th of October, 1866, entered into the possession of the land. On the 11th day of October, 1866, said George G. Armistead departed this life in Lauderdale county, leaving him surviving a widow (the appellee) and several children. Irvine, the purchaser, died soon after the sale, and his administrator continued in possession of the land after his death. George G. Armistead was seized in fee of the land sold by the sheriff, at the date of the rendition of the judgment as well as the time of his marriage and at the date of the sale of the land.

On the 2d of February, 1869, appellee, the widow, filed her bill in the chancery court of Lauderdale, praying that dower be allotted her in the lands of her husband, bought by Irvine, and then in the possession of his administrator, and that an account be stated, &c.; that the administrator be decreed to pay her one-third of the mean profits of said lands from the date of her husband's death. The administrator and proper parties were made defendants to the bill, and they answered and demurred to the bill for want of equity.

On the hearing the chancellor overruled the demurrer, granted the relief prayed, &c., and referred it to the register to take and state an account of the rents and profits of the lands, from the date of the death of complainant's husband, &c., allowing the administrator credits for improvements, &c. The register reported that complainant was entitled to the sum of $604.93, as her third of the mean profits, and this report, no objections having been filed, was duly confirmed by the chancellor.

The defendants appeal and assign as error—

1st. Overruling demurrer for want of equity.

Irvine, Adm'r, v. Armistead.

2d. The final decree rendered.

3d. Allowing rents to complainant.

PICKETT & PATTERSON, for appellant.—Appellee is not entitled to dower in the lands.

1st. Because the lien on said·lands, created by the rendition of said judgment on the 16th September, 1861, was paramount and superior to the .claim of dower, which did not attach until the marriage in November, 1862.

2d. Because the general doctrine on the subject is, that the wife's dower is liable to be defeated by every subsisting claim or incumbrance in law or equity which existed before the inception of her right to dower, and which would have defeated the husband's seizin.

To sustain this position the following authorities are relied on:—Peck on Dower, 106; 4 Kent's Com. 50; Roper on Husband and Wife, 358; 1 Scribner on Dower, 564, 572, 574, and cases cited.

Dower is defeated by a mortgage, or judgment lien, subsisting before dower attaches, and which would destroy the husband's seizin; and a judicial sale for the payment of debts will defeat the right of dower, when the lien created by the judgment existed before the marriage.—2 Bouvier, 247; 12 S. and R. 21; 1 Yates, 300; 1 Wash. on Real Estate, 193, 240, top page, 3 p. 117; 2 Carter, 58; 10 Maryland, 5; 8 Blackf. 274; 31 Maine, 403, 11 § and m. 164; 2 Robeson, (Va.) 398; 1 Scribner on Dower, 572; 7 Humph. 72; 1 Ohio, 99; Hilliard on Mort. 631;·3 Bacon's Ab. 236; 14 Ala. 370; 23 Ala. 268; 36 Ala. 533; 40 Ala. 540; 21 Ala. 528; 35 Ala. 497.

Another view of the case is this: that the judgment under which the land was sold is a contract between the parties, and composes the highest obligation known to the law, and entitled to the protection of the constitution. How, then, could Armistead, by any act of his own, impair or destroy its force, or take away, reduce or impair, any of the securities given by law for its satisfaction.—Chitty on Cont. 2, 23; 1 Par. on Cont. 7; *Weaver v. Lapsley*, 43 Ala. By the act of the legislature, December 10th, 1861, a lien

was created in favor of judgment creditors on all the property of the defendants in the State, and all subsequent acts carefully preserved this lien.—Acts, 8th December, 1863; Acts, 23d February, 1866, p. 81; Acts, 19th February, 1869, p. 609; Acts, 1868, p. 266; Rev. Code of Ala. §§ 287, 2891.

But appellee contends all the acts of the legislature are void, because enacted by a legislature of a State at that time at war with the United States, and that during the war of rebellion the State government was an illegal one, and its laws and courts mere nullities, and can not be made valid by the subsequent legislation of the present rightful State government, after restoration. This proposition ought not to be sustained, because it would unsettle the entire social fabric, and open upon the country a pandora's box to flood it with unmitigated evils, and, besides, is contrary to the decisions of the supreme court of the United States, and the several State courts where the question has come before them.— *Texas v. White.*

An ordinance was passed by the convention of 1861, relieving the officers in Alabama from the necessity of taking an oath to support the government of the Confederate States, or the insurrectionary government of Alabama, and it is a matter of judicial history, that none of the incumbents in office were required to vacate by the constitution of 1861. It will be seen by reference to the exhibits on file in this cause, and copied in this cause, and copied in the record, that the Hon. John E. Moore, as judge, Shaler Ives, as sheriff, and V. M. Benham, as clerk, held the term of the Lauderdale county circuit court, at which this judgment was rendered. This court will take judicial notice, that on the 11th day of January, 1861, the Hon. John E. Moore was the judge of the 4th judicial circuit of Alabama; that Shaler Ives was the sheriff of Lauderdale county; that V. M. Benham was the clerk of said court, and that said judgment was rendered at a time prescribed by law, in force prior to the passage of the ordinance of secession, for holding of fall term of said circuit court. This court will take judicial notice of the fact, that each

Irvine, Adm'r, v. Armistead.

of the officers of said court held their respective offices by virtue of commissions derived from the rightful and legitimate government of Alabama, and that the term of neither of said officers had, on the 16th day of September, 1861, expired by operation of law. There is not the slightest evidence in the record, that either of said officers, prior to the rendition of said judgment, had ever engaged or in any manner participated in the rebellion. Suppose the judgment in question had been rendered under the same circumstances, on the 16th day of September, 1860, instead of 16th of September, 1861, it would, beyond all controversy, have been a valid judgment in every particular. This being the case, how can this judgment become a nullity, or even a foreign judgment by virtue of the ordinance of secession? How could a void ordinance give validity to what would otherwise have been a valid judgment? In the case of *Chisholm v. Coleman*, 43 Ala., this court recognized, it is submitted, the principle here contended for. Coleman was judge by virtue of an election held in 1858. On the 16th day of May, 1862, he became a colonel in the Confederate army. He had drawn his salary up to, and including the 31st of March, 1862. This court decided that he was entitled to his salary as judge, from the 31st day of March, 1862, to the 16th day of May, 1862, the day that he embarked in rebellion against the government of the United States. Now, suppose that judge Coleman had rendered a judgment, otherwise regular and proper, at a time intervening between the 31st day of March, 1862, and the 16th day of May, 1862. Would such judgment have been valid? Would it have been a domestic judgment or a foreign one, or in the nature of a foreign judgment? To hold such a judgment void, would be an anomaly in the history of judicial decisions. We would then have the unparalleled precedent of the supreme court of a loyal State holding a judgment void, as between citizens, for no other reason than that it was contaminated by the rebellion, and yet ruling that the judge who rendered the judgment was justly and fairly entitled to be paid out of the treasury of the State for his services. To hold

Irvine, Adm'r, v. Armistead.

that such a judgment was foreign, or in the nature of a foreign judgment, would be equally obnoxious to law and sound reasoning. If the judgment was foreign the judge who rendered it was foreign, and we would then have the precedent established that foreign judges were entitled, upon proper application, to payment of their salaries out of the treasury of Alabama. Such a doctrine is utterly untenable, and directly at variance with the ruling of this court in the case just cited. That decision, it is contended, is grounded in correct reasoning, and happily it has met with the concurrence of the supreme court of the United States in the case of *White v. Cannon.* In that case, the court says "that a judgment rendered by the supreme court of Louisana after the passage of the ordinance of secession in that State, was not affected thereby, for the same reason that the ordinance was void."—See *White v. Cannon*, 7th Wallace, p. 442 ; Ordinance Convention, 21st Sept. 1865 ; Ordinance Convention, 6th Dec. 1867 ; *Randolph v. Baldwin*, 41 Ala. 309 ; *Winter v. Dickerson*, 42 Ala. 92 ; *Hoffman v. Boon & Booth*, 43 Ala. 1869 ; Ordinance No. 15, Convention 1867 ; *Auditor v. Taylor*, 43 Ala. 1869 ; *Hall v. Hall*, June term, 1869 ; *Armstead v. State*, 43 Ala.

Under our statutes the widow's quarantine does not extend beyond the right to occupy the dwelling house in which her husband dwelt next before his death, and the lands thereunto adjoining.

In this case, the record shows that the lands in which dower is claimed, are situated some ten miles from the mansion and lands adjoining, where the husband dwelt next before his death. And until dower is assigned, the widow has no estate whatever in said lands, but the mere right to have dower allotted to her, and not being entitled to the possession of such lands has no claims for back rents. 6 Ala. 873 ; 13 Ala. 329 ; 35 Ala. 497, 644 and 528 ; 36 Ala. 203 ; 37 Ala. 484 ; 38 Ala. 608 ; *Clay v. Richardson*, 43 Ala.

O'NEAL, LEWIS & COOPER, *contra.*

Irvine, Adm'r, v. Armistead.

(Appellee's brief did not come into Reporter's hands.)

PETERS, J.—It is insisted by the appellant that the judgment of the circuit court in favor of Brickell against said George G. Armistead operated as a lien on the lands mentioned in the complainant's bill; and that this lien, having accrued before the marriage, defeated the right to dower upon the sale under said execution issued on said judgment to satisfy the same. This defense sets up two assumptions: First, that said judgment was a lien on said lands; second, that the right of dower attached, subject to be defeated by this lien on a sale of said lands to satisfy said judgment. At least, I so understand the argument of the learned counsel for the appellant, Irvine. The first assumption is the first to be considered. If that proves untenable, then the second must fail also; because the second stands upon the first.

Dower is greatly favored by the law. It is classed with those rights we are accustomed to denominate as sacred. It is ranked with the right to life and to liberty.—4 Bacon, 345; 1 Story's Eq. § 629. This may well be so in a free country; because it is for the comfort, the support and the protection of the mothers and the children of the State. In truth, the law upon the subject of dower is a pledge by the commonwealth to them that, upon the father's death, they shall not be expelled from the home which he had provided for them.

When the judgment here relied on was rendered, there was no law of this State, which this court can enforce, that made such a judgment a lien on the lands of the defendants therein. The execution in the hands of the sheriff was made by law a lien on the lands and other property of the defendants subject to levy and sale, but this lien did not belong to the judgment. And this lien was only continued as long as the writ of execution was regularly issued and delivered to the sheriff without the lapse of an entire term.—Code of Ala. § 2456; Rev. Code, § 2872; *Daily v. Burke*, 28 Ala. 328; *Curry v. Landers*, 35 Ala. 280. The enactment of the insurgent government in this State, of

December 10, 1861, was of no force, so far as this case is concerned. It did not change the law as it existed before its date.—*Texas v. White*, 7 Wall. 700; *Martin v. Hewitt*, June term, 1870; *Ray v. Thompson*, 43 Ala. 434; *S. C. on second application for re-hearing*, June term, 1870. This act out of the way, there was no subsisting lien on the lands in controversy at the date of said marriage. The execution had not been regularly issued and continued from term to term. This was necessary to keep the lien in force.— Code, § 2456; *King v. Kenon*, 38 Ala. 63; see, also, *Kirksey v. Hardaway*, 41 Ala. 338; *Sanford v. Ogden, Furguson & Co.*, 34 Ala. 118; *Troy v. Smith & Shields*, 33 Ala. 469. The enactments of December 8, 1863, February 20, 1866, and February 19, 1867, have all been passed since the marriage of Mrs. Armistead with her said husband, now deceased, and they can not be allowed to affect her rights, unless it can be clearly shown that it was the legislative purpose to have done so. Her right to dower had then attached to *all the lands* of her husband which fell within the description of those mentioned in the statute. These acts were not intended to displace or impair this right; and on the death of the husband it became complete.—4 Kent, 50; Rev. Code, § 1624. Then, without intending to repeat the discussion on the validity of the judgment now interposed as a bar to the right of dower in this case, as a judgment of a court of the insurgent government in this State, during the supremacy of the late rebellion, it may be allowed that, if it were valid, it possessed no lien at the date of the marriage in this case.—33 Ala. 469, *supra*. The husband's seizin, then, at the marriage, was in fee and unembarrassed by any lien. When this is the case the right of dower accrues, and it continues until it is *relinquished* by the wife, in the manner prescribed by the Code. And as this is the only mode of barring the wife prescribed by the statute, it may be very seriously doubted whether any other was intended to be allowed, if the marital relation continued up to the death of the husband.—Revised Code, §§ 1624, 1626 and 1629.

But did the legislature intend, in granting the right of

Irvine, Adm'r, v. Armistead.

dower to the widow in the husband's lands, to make it, under any circumstances, subservient to the lien of a judgment at law against the husband, whether before or after marriage? Certainly, from what has been said in the foregoing discussion, the right to dower is superior to all liens in which the wife does not join, which accrue after marriage. *Owen v. Slatter et al.*, 26 Ala. 547 ; *Nance v. Hooper*, 11 Ala. 552. Neither the lien of a judgment nor the right to dower depend upon contract or grow out of contract, as that word is used in a commercial sense. They are the creatures of the statute, and may both subsist at the same time. When this is the case, was it the purpose of the legislature that the right of dower should be displaced by the lien of the judgment? As the will of the legislature is the basis of both rights, it could, within the strict limit of its powers, declare that the right of dower should *always* displace the lien of the judgment. This is the reasoning of this court in the analogous case of exemptions in favor of the family.— *Watson et al. v. Simpson*, 5 Ala. 233. The Code defines dower in this language : " Dower is an estate for life of the widow in a certain portion of the following real estate of her husband, to which *she has not relinquished her right* during the marriage: 1. *Of all lands* of which the husband was seized in fee during the marriage. 2. Of all lands of which another was seized for his use. 3. Of all lands to which at the time of his death he had a perfect equity, having paid all the purchase-money therefor."—Rev. Code, § 1624. This is the pledge of the commonwealth to the woman who marries. It is a statutory privilege. It is expressed in language perfectly plain, absolute and unlimited. Were it a stipulation in a deed, there could be no rational contest about its meaning and intent. If there is a marriage, seizin during the coverture, and death of the husband, then the right to dower is absolute, unless the widow has relinquished it. This is the sole condition that may defeat it.

The same law, it is true, makes the husband's lands subject, by judgment and execution, to the payment of his debts. But it does not say that this privilege shall override

and displace the superior privilege of dower on behalf of the widow. To say that the lien is to be preferred because it is prior in time, is to qualify and limit the stipulation giving dower. This can not well be done, where it is legitimate to make the construction most favorable to the right of dower. As soon as the facts exist that give birth to the right of dower, then the enjoyment of the fruits of the lien is postponed till possession under the dower is exhausted. The execution purchaser, by the sale, steps into the shoes of the debtor, it is true; but he takes the estate subject to the dower, as the husband held it from the moment of the marriage. When the dower right is exhausted, the execution purchaser takes all. These are questions not to be settled by the common law. They spring out of our statutes, and are to be solved according to their language and intent. And it seems to me most conformable to the spirit of our law to apply to the construction of the statute defining and regulating dower, the same liberality that has been granted to the like statute of exemptions. 5 Ala. 233, *supra.* In doing so, it simply places the right to dower, which attaches after the judgment against the husband, on the same footing that it holds when it attaches before the judgment, (11 Ala. 552, *supra,*) and upon the footing of exemptions in favor of the family.—5 Ala. 233, *supra.* But it is not really necessary to settle this question in this case. It is determined without it.

The judgment in favor of Brickell against George G. Armistead, upon which the appellant relies to defeat the complainant's claim of dower in this case, can not now receive in this court such force as would give it that effect. It was wholly devoid of any right of lien. It could not, then, stand in the way of the right of dower claimed by Mrs. Armistead. It will hardly now be seriously pretended that there was no change wrought in the government of this State by the passage of the ordinance of secession, and that the government was the same after the *eleventh* day of January, 1861, that it was before that day. Nor will it be contended that the government existing up to the passage of this ordinance was overthrown, and a "new

government was erected in its stead" by piece-meal. 6 Wall. 13. If this did not so take place, then the judicial department of the legal government of the State passed away with the executive and legislative departments of the same. What was found here afterwards exercising jurisdiction in any of these departments of government, belonged to the new organization under the insurgent power. This insurrectionary organization was established in hostility to the constitution of the United States, and for this reason the whole structure was illegal and void.— *Texas v. White*, 7 Wall. 700, 732, 733. Let it be admitted that the merits of the case of *Texas v. White*, above cited, turned upon a *judgment* of a rebel. court in that State, instead of a *law* of the unlawful government, would the judgment have escaped the fate of the law? It seems to me that it could not, if the reason given for the invalidity of the law was correct. And in this the whole court concurred. Then, if the law was void, as it was pronounced, the judgment must have been void also. A void judgment is nothing. It is not a mere irregularity, which the legislature might amend. To make such a judgment good, would be to make a new judgment. This the legislative authority can not do, nor any other authority in the State acting under constitutional limitations. The legislative power may make such proceedings the basis for a new trial, or a ground for review and correction of error, or it may refuse the parties relief who have acted under them.—Ordn. No· 39, 40; Pamph. Acts 1868, pp. 186, 187, 269. It seems to me, that to go beyond this, under our system, would be an unjustifiable usurpation. That the learned and able counsel for the appellant have wholly failed to furnish any domestic authority supporting the validity of the judgment, without ratification or cure of some kind by the legal government, is the amplest and most satisfactory evidence that none such exists. That such judgments should be cured in some way, is the opinion and practice of jurists of the highest standing.—Ordn. No. 26, Rev. Code, pp. 58, 59; 3 Ala.

The facts, then, show that the complainant in the court

below was entitled to dower in the lands set forth and described in her bill. In such case, the court of chancery has original and concurrent jurisdiction with courts of law to ascertain and adjust her rights.—4 Kent, 71, and cases there cited; 1 Story Eq. § 624, *et seq.;* Rev. Code, § 1631; *Brooks v. Woods,* 40 Ala. 538; *Waters v. Williams,* 38 Ala. 680; *Owen v. Slatter,* 26 Ala. 547.

The widow's title to the dower lands is a legal title, and it springs up into perfection immediately on the death of her husband. If it can be defined by metes and bounds, it is as perfect as though it were created by deed dated on the day of the husband's death. And if the allotment by metes and bounds can be made, she is entitled to the immediate possession as fully as she would be under a deed. The rights being the same, whether by dower or by deed, like consequences should follow both. *Eadem ratio, idem lex.*—Broom's Max. p. 64, marg. Reasonable satisfaction may be recovered for the use and occupation of land in this State.—Rev. Code, § 2707; see, also, *Slatter v. Meek,* 539, 528. And in such case, where there is no special rule in equity, the rule at law will be followed. *Equitas sequitur legum.*—1 Story Eq. § 64, *et seq.* The possession of the complainant having been obstructed by the appellant, Irvine, she was entitled to some damages.—Sedg. on Dam. 133, *et seq.* There was no error, then, in the reference to the master to make inquiry of this damage, and report the same to the court. As this report was made, and not objected to before its confirmation in the court below, it is too late to raise the objection here for the first time. *Gerald v. Miller's Distributees,* 21 Ala. 433; *Lang v. Brown,* 21 Ala. 179; Rev. Code, §§ 3387, 3389. Unless the decree of reference upon its face showed error, there can be no doubt of the propriety of the reference.—*Springle's Heirs v. Shields & Paulding,* 17 Ala. 295. In *Beavers & Jamison v. Smith,* (11 Ala. 20, 32,) it is said that "damages are properly the mean profits arising *after* the death of the husband and *before* the suit for dower. * * * But whatever may be the rule at law, in equity the established doctrine is to allow the widow the *mean profits as damages,*

and this not by analogy to the allowance of damages under the statute of Merton, but on the grounds of title." *Ib.* p. 32. This intimation also comports with the language of our statute, which gives the owner of lands in this State "reasonable satisfaction for its use and occupation."—Rev. Code, § 2607. The alienee who obstructs the widow's right to her dower lands, under our statute, can not claim to stand on a better footing than the heir. Her title is the same against both of these, and either, as he may have the seizin and occupancy of the dower lands, may put her in possession immediately upon the death of the husband, if he chooses.—*Johnson, adm'r, v. Neil and Wife*, 4 Ala. 166. In this case, the appellant's possession from the death of the husbond was continuous up to the filing of the bill, and afterwards until the allotment of the dower. He had enjoyed the use and occupation for the whole of this period. The same law which gives compensation after the filing of the bill for the use and occupation, also gives it before the bill is filed. The alienee could only be charged with damages for the use and occupation of the widow's dower during the period of his tenancy. This is what the chancellor decreed, and it is what the master ascertained and reported. The judgment is therefore right, and it will not be disturbed.

The decree of the court below is affirmed ; and the appellants will pay the costs in this court and the court below.—Rev. Code, §§ 2779, 3471.