# MICOU ET AL. *vs.* TALLASSEE BRIDGE CO.

[BILL IN EQUITY TO ENJOIN INVASION OF TOLL-BRIDGE FRANCHISE, AND FOR ACCOUNT, &C.]

1. *Act incorporating persons to build toll-bridge; creates a contract governed by the then existing law.*—An act of the general assembly of this State incorporating a company of persons, with authority to erect a toll-bridge across a river in this State, is a contract, which must be construed in reference to the laws as they existed at the date of its passage.

2. *Same; how such contract can not be impaired.*—Such a contract the general assembly can not impair by a second grant made some years after, to other parties, conferring upon them authority to erect another toll-bridge within three miles, by water, from the one first erected, over the same stream, when the first act was passed in 1837.

3. *Chancery; when will take jurisdiction to enjoin erection of toll-bridge.* If such second toll-bridge is erected within the distance prohibited by law, at the date of the first act, chancery will enjoin its use and abate it as a toll-bridge.

4. *Final decree; what not sufficient reason for disturbing.*—A decree disposing of the equities of the case and ordering a reference to the master, where the bill was filed in 1858, and the cause was brought to a hearing in 1860, will not be set aside as a nullity, because the case was not finally disposed of until after the end of the late war. If otherwise regular, such decree is valid.

5. *Same.*—In such a case, a final decree rendered after the restoration of the legal State government, will not be held void or irregular, because the reference upon which it is founded was commenced before the rebellion, and not concluded until after the restoration of the legal State government, when such order of reference was renewed after the restoration, and the report made under the authority of the renewed order.

6. *Same; what sufficient to support decree.*—A report on such a reference, after it is confirmed without objection or exception in the court below, will be held sufficient to support the final decree, for the amount of principal and interest ascertained and stated by the master on such renewed reference.

7. *Rehearing, application for; what questions will not be considered on.* On an application for rehearing, this court will not consider a question that raises a new assignment of error not insisted on in the court below, and not before insisted on in this court.

8. *Same; assignment of error; when held to be waived.*—An assignment of error not made or not insisted on in this court at the hearing, is to be regarded as waived.

Micou et al. v. Tallassee Bridge Co.

APPEAL from the Chancery Court of Tallapoosa.
Heard before the Hon. JAS. B. CLARK.

The facts are sufficiently stated in the opinion.

JNO. W. A. SANFORD, and GOLDTHWAITE, RICE & SEMPLE,
for appellant.

W. P. CHILTON, and G. W. GUNN, *contra*.

[No briefs reached Reporter.]

PETERS, J.—This is a suit in chancery, commenced by
the Tallassee Toll-Bridge Company as complainants, in
the 14th district of the middle chancery division, on the
sixth day of September, 1858. The parties were all
brought into court, and the cause submitted upon the
pleadings and proofs as to some of the defendants, and
upon the decree *pro confesso* as to others, at the November
term, 1859, of said court, and held up for consideration
and decree in vacation or at the next term. And at the
May term, 1860, the decree was rendered disposing of the
equity of the case, and directing a reference to the master
to take and state an account as ordered in the decree.
The master took this account and made a report at the
November term of said court in the year 1860. This re-
port was allowed to stand over without confirmation, and
the master was ordered to make a further report at the
next term, which was the May term, in the year 1861. At
this term the register read a report, which was ordered to
lie over. The report thus taken is set out in the record.
But it merely shows that the reference ordered had been
deferred by the register to enable the complainant to make
application to the court respecting the same. At the May
term, 1861, of the court, the order of last term was va-
cated, and the register was directed to report as required
by the complainant to this term, if practicable; but if not,
then at the next term of said court. At the May term,
1862, there was some further reference directed, and a re-
port made at the November term, 1862, when a further
reference was ordered, and the cause was continued. In
1863, at the May term of said court, the register read a re-

port, which was ordered to lie over. This report is set out in the record, but it only shows that the register had been unable to hold the reference ordered. The cause was then continued from term to term until the May term, 1867, when, on motion of complainant, it was " ordered that the register may hold the reference ordered and directed by a former decree of this court, at Tallassee, and the cause is continued under former order." The register reported that he was unable to hold this reference. This report was confirmed, and a further reference was ordered, with instructions to the register, which are set forth in the decree directing the reference. Under authority of this order, the register made a report, which is dated November, 1867. This report was read, and the cause continued until November term, 1868, when the final decree was made. There was no objection or exception to the report thus made, and the same was confirmed.

Upon this state of the record, the learned chancellor, in the court below, based his final decree, which is dated November 25, 1868. And I recite so much of it below as I suppose is intended to be assailed by the errors assigned by the appellants, that is to say : " It having been referred to the register of this court, as master in chancery, at the June term, 1862, to take and state an account for *principal and interest* due complainants, in the bill mentioned, and the register at the same term of the court having reported that there was the sum of $2,578 79; and it having again been referred to the register to ascertain and report at the November term, 1867, the amount of interest that had accrued on the amount reported by the register of the court as aforesaid, and the said register having reported that there was interest to the amount of $846 65 accrued on said amount, *and that the amount for principal and interest amounted to the sum of $3,425 39, and the said several reports having been confirmed by the court,* It is therefore ordered and decreed by the court, that the complainants recover of defendants the sum of $3,425 39, and the costs of this court," &c.

From this decree the appellants, who were the defend-

ants in the court below, appeal to this court, and here assign the following errors:

" 1. The overruling the demurrer to the complainants' bill of complaint.

" 2. The decree against the defendants and the order of reference to the register to take the account.

" 3. That there was no lawful court in Alabama from January 11th, 1861, till the rightful government was established, and all the decrees and decretal orders rendered during that time are void.

" 4. The rendition of the final decree is based upon the pretended reports of persons who were not registers of the court."

This bill is filed to enjoin the defendants from keeping open, for toll, an opposition toll-bridge, within two miles of the toll-bridge of the complainants, and to have said opposition bridge abated, and to compel the defendants to account for the improper receipts for tolls received at said opposition bridge.

The allegations of the bill show that the complainants, as a body corporate, created by act of the general assembly of this State, approved June 30, 1837, built a toll-bridge at Tallassee, across the Tallapoosa river, in this State, at very considerable expense to themselves, under the terms and conditions prescribed in said act, and gave bond to keep the same in repair, as required by law. Said act is made an exhibit to the bill. After the complainants had erected their said bridge under authority of said act, and had the same in successful and profitable operation for some years, the defendants, under pretense of authority of a certain act of the general assembly of this State, approved January 30, 1850, entitled " An act to incorporate the Central Plank Road Company," erected an opposition toll-bridge over the same stream within two miles of their bridge, by means of which the complainants were greatly injured in their business by loss of tolls thus occasioned, so that the receipts from their bridge had been barely sufficient to keep it in repair, and had yielded them nothing in the way of net profits. And it was also alleged that if

said bridge is allowed to stand and withdraw the custom and toll from complainants' bridge, that they will be greatly damaged in future as they have already been in the past.

The act of June 30, 1837, establishing a bridge company to build the toll-bridge over the Tallapoosa river, is a contract by which the State grants certain franchises to the corporators, in consideration that they agree and bind themselves to erect the bridge and keep it in repair, and permit the passage of the citizens of the State and their property over it at certain specified rates of toll.—*Dartmouth College v. Woodward*, 4 Wheat. 629. This contract, like all other contracts, includes the laws defining its stipulations at the time it is entered into.—*Von Hoffman v. City of Quincy*, 4 Wall. 535, 550; *Bronson v. Kinzie*, 1 How. 319; *McCrakin v. Hayward*, 2 How. 612; *Planters Bank v. Sharp et al.*, 6 How. 327; *Beers v. Houghton*, 9 Pet. 359; *Ogden v. Saunders*, 12 Wheat. 231; *Mason v. Haile*, 12 Wheaton, 373; *Sturgis v. Crowningshield*, 4 Wheaton, 122; *Green v. Biddle*, 8 Wheat. 92; *Terret v. Taylor*, 9 Cranch, 43; *Fletcher v. Peck*, 6 Cranch, 87; *New Jersey v. Wilson*, 7 Cranch, 164; *People v. Bond*, 10 Cal. 570. Then, the legislature can not alter or impair such a contract without the consent of the corporators, unless this power was reserved at the time it was made.—Const. U. S., Art. I, § 10, cl. 1; Paschall's Const. U. S., pp. 153, 155, 156, and cases there cited. At the time the act last above referred to was passed, the law of this State forbid any toll-bridge to be established within three miles of one already erected. Aik. Dig. p. 514, § 29. This being the law, it follows that the legislature could not give authority to set up a second toll-bridge within the prohibited distance of three miles from the one already established. And if such second bridge was so set up, a court of equity would restrain the owners from using it as a toll-bridge, to the injury of the owners of the one already established.— *Gates v. McDaniel et al.*, 2 Stew. 211; *Harrell & Croft v. Ellsworth et al.*, 17 Ala. 576; *Bridge Proprietors v. Hoboken Co.*, 1 Wall. 146. The complainants' bill was not without equity, and the de-

murrer was properly overruled. This disposes of the first assignment of error.

The allegations of the bill are fully sustained by the proofs. The defendants offered no evidence in support of their answer. And the evidence for the complainants fully overturns the denials of the answer. In such case the complainant is entitled to relief. Here the decree does not go beyond the allegations and the proofs. There was no error, then, in the decree fixing the complainants' equity and making a' reference to the master. This decree was made before the passage of the ordinance of secession, and was valid. This disposes of the second assignment of error.

The decrees taken in this cause during the supremacy of the rebellion were all interlocutory orders, and there was no final action taken on any of them. They amounted to so many continuances. This would have been the legal effect of the interposition of the insurgent authority, even if no continuances had been granted. There was no court to try the cause, and it necessarily stood continued. After the restoration of the rightful State government, there was a new reference to the master, to state an account between the parties therein named. If the directions given for the taking and stating this account were not satisfactory to the defendants, other directions should have been asked, and the report should have been excepted to before its confirmation. It is too late to raise the objection here for the first time, when the report is not on its face erroneous. *Gerald v. Miller's Distributees*, 21 Ala. 433. The final decree was made after the suppression of the rebellion and the restoration of the legal State government on the 25th of November, 1868, and it is based upon the master's report made to the court and confirmed at that term. And it supplies the facts upon which the final decree rests. Such a decree is not erroneous for the reasons assigned in the third and fourth assignments of error. It appears that appellants gave bond suspending the decree in the court below —Rev. Code, § 3489.

The decree of the chancellor in the court below is there-

fore affirmed, with ͺdamages, and costs of this appeal in this court and in the court below.

[NOTE BY REPORTER.—An application for rehearing was made by appellants' counsel shortly after the delivery of the foregoing opinion, to which the following response was made :]

PETERS, J.—The ground' relied on for a rehearing in this case is the defective service of the process upon the minor defendants, who were under the age of fourteen, when the bill was filed in the court below.

This allegation is but a new assignment of error, not insisted on in this court before. The record shows that the minor defendants answered the bill by guardian *ad litem ;* and although this was not very regularly done, no objection was made to the irregularity in the court below or heretofore in this court. The rule of practice requires that the error complained of shall be concisely stated in writing, so as to point out in' what the error consists. Errors not so assigned are to be regarded as waived. And the assignment will not be sufficient if it is merely general, and not particular, and directed to that portion of the record in which the error complained of is supposed to exist.—*Eslava v. Lepretre,* 21 Ala. 504; *Freeman v. Swan,* 22 Ala. 106 ; *Curry v. Woodward,* 44 Ala. 305. And when the error is properly assigned, this court will not feel bound to notice it, unless it is pressed in the brief or the argument of the counsel for the appellants on the hearing, except, perhaps, a want of jurisdiction.—*Arrington et al. v. Roach, Adm'r,* 42 Ala. 155 ; *Henderson, Adm'r, v. Huey et al.,* 45 Ala. 275, 284 ; *Long v. Rodgers,* 19 Ala. 321; *Withers v. Spears,* 27 Ala. 455 ; *Howard v. Coleman,* 36 Ala. 604. There were four assignments of error made upon the record at the hearing. There are none of them that raise the objection insisted on in this application. An objection not insisted on is an objection waived.—*Evans v. St. John,* 9 Port. 186, and cases *supra.* Governed by the practice

established by the foregoing authorities, the rehearing is denied, with costs.

[NOTE BY REPORTER.—After the denial of the first application for rehearing, the appellants made another, which was denied, with costs. The main opinion in the case was delivered at the June Term, 1871.]