# Lehman, Durr & Co. v. Ferrell.

### *Claim Suit for Horse taken under Execution.*

1. *Act of December 8th, 1880 construed; character of lien thereunder.* The act approved Dec. 8, 1880 (Acts, p. 260), makes it unlawful for the owner of certain named stock to voluntarily permit such stock to go at large off his premises in designated portions of Montgomery county, and provides that he shall be liable to every person injured for all damages done by the stock, when at large, to fruit or shade trees, shrubbery or crops, and further provides that a judgment obtained for such damages "shall be a lien on the stock causing such injury, in addition to other liens which an execution on such judgment may have according to law." *Held*, that the lien thereby provided for does not arise by operation of law from the act done, or the injury sustained, but depends upon the subsequent reduction of the claim to judgment.

2. *Extent of lien thereby provided.*—Such lien can only be commensu-

rate with the ownership of the person by whose voluntary permission the stock was at large; and hence, it is subordinated to the lien of a prior recorded mortgage, executed by such owner.

APPEAL from Montgomery Circuit Court.

Tried before Hon. JAMES E. COBB.

The nature of the case, and the facts disclosed by the evidence are sufficiently stated in the opinion. At the written request of the plaintiff, Ferrell, the court charged the jury that if they believed all the evidence, they must find the issue in favor of the plaintiff, and the horse in controversy liable to the satisfaction of his execution. To this charge the claimants, Lehman, Durr & Co., excepted, and here assign the same as error.

E. P. MORRISSETT, and CLOPTON, HERBERT & CHAMBERS, for appellants.

J. M. FALKNER, contra.

STONE, J—The single question raised by the record, and to which the arguments of counsel are directed, is, whether or not the lien given by the act of 1880–81, approved December 8th, 1880 (Acts 1880–81, p. 260), entitled "An act to prohibit the owner of any horse, mule, ass, cow, hog, sheep, or goat, from allowing any such animal to go at large off the premises of such owner in Montgomery county, except certain portions enumerated and defined herein, and to prescribe a rule of damages, and rules of practice in cases arising under this act," is superior to, and overrides the lien of a mortgagee, under a prior recorded mortgage.

The appellee, Ferrell, brought suit before a notary with justice powers, for damage done by the stock of one Ballard. A judgment was rendered by the notary in favor of the plaintiff, the concluding sentence of which is in these words: "And a lien is hereby created by statute upon the stock doing such damage." The appellants then interposed a claim to the property, a horse, upon which the execution was levied, which claim was not sustained by the notary, and an appeal was taken to the Circuit Court. In the Circuit Court an issue was made up between the plaintiff in execution, and the claimants, appellants here. The plaintiff in execution made proof of the fact that the horse upon which the execution was levied, was the identical animal which committed the trespass complained of, and for which judgment was rendered by the notary under section 1 of the above mentioned act. The claimants proved that said Ballard was indebted to them on February 16th, 1881, and on that day, which was prior to the damage complained of, he executed to them

[Lehman, Durr & Co. v. Ferrell.]

a mortgage upon the horse upon which the execution was lev-
ied, together with other property; that the mortgage was duly
recorded, and has never been paid.

The first section of the act declares: "That from and after
the passage of this act, it shall not be lawful for the owner of
any horse, mule, ass, cow, hog, sheep, or goat, in that part of
the county of Montgomery as hereinafter set forth, voluntarily
to permit any such animal to go at large off the premises of
such owner, and the owner of any such animal, so permitted to
go at large, shall be liable to any party injured thereby for all
damages done to the fruit or shade trees, or ornamental shrub-
bery, or crops, of any person or persons, to be recovered before
any court of competent jurisdiction; and the judgment of the
court, when against the owner of any such stock so depredat-
ing, shall be a lien on the stock causing such injury, in addition
to other liens which an execution issued on such judgment may
have, according to law."

It will be observed that the statute gives no lien, attaching
upon the commission of the trespass, nor upon the injury sus-
tained by the person upon whose property the trespass is com-
mitted. The lien does not arise by operation of law from the
act done, or the injury sustained, but depends for its ascertain-
ment upon the subsequent reduction of the claim to judgment;
when, in the language of the statute, "the judgment of the
court, when against the owner of any such stock so depredat-
ing, shall be a lien upon the stock causing such injury." Can
the lien of a judgment be superior to that of a prior recorded
mortgage?

Before the Code of 1852, there was a lien upon the lands of
the defendant from the rendition of the judgment.—*Morris v.
Ellis*, 3 Ala. 560; *Campbell v. Spence*, 4 Ala. 543; *Daily v.
Burke*, 28 Ala. 328. Under this law it was held that "the lien
of the judgment must necessarily be subject to the equities al-
ready existing over the property."—*Coster v. Bank*, 24 Ala. 37.
Mr. Freeman in his work on Judgments, in discussing the lien
of judgments, uses this language: "Whenever a lien attaches
to any parcel of property, it becomes a charge upon the precise
interest which the judgment debtor has, and no other. The
apparent interest of the debtor can neither extend nor restrict
the operation of the lien, so that it shall incumber any greater
or less interest than the debtor in fact possesses.—Freeman on
Judg. § 356; *Walke v. Moody*, 65 N. C. 599; *O'Rourke v.
O'Connor*, 39 Cal. 442; *Churchill v. Morse*, 23 Iowa, 229; *Fil-
ley v. Duncan*, 1 Woolworth (Neb.), 134.

The language of the statute must exert a controlling influence
in its interpretation. "Voluntarily to permit any such animal
to go at large off the premises of such owner," is the language

[Betancourt v. Eberlin, Adm'r.]

employed by the legislature. That is the offense against good neighborhood, which the statute was intended to prevent or deter, by the imposition of damages, and by giving a lien not conferred by the general law. This marked privilege, given as a means of enforcing such recoveries, evidently owes its birth and existence to the disregard of social duty, shown by voluntarily permitting the injury to be done. Damage done by stock going at large, without more, does not entitle the party injured to maintain the action and enforce the lien. To incur the penalty, the damage must be done by a horse, mule, etc., which the owner voluntarily permits to go at large off his premises.

The foregoing being the proper necessary interpretation of the statute, we think the lien the statute gives on the stock doing the damage, can only be commensurate with the ownership of the person, by whose voluntary permission the stock runs at large.

Ballard was the person sued, by whose voluntary permission it is charged the horse was at large. The lien can only extend to such title and interest as he was the owner of.

From what we have said above, it follows that the judgment of the Circuit Court must be reversed, and the cause remanded.