ADLER, Respondent, vs. GODFREY, Executrix, Appellant.

*March 13—April 8, 1913.*

*Sales: Passing of title: Right to possession: Chattel mortgages: Validity: Inaccuracy in description: Notice: Possession by mortgagor: Lien for storage: Right of mortgagee to take property.*

1. A paper signed by the owner of an automobile: "June 2, 1908, Received of John Ure the sum of $2 to apply on Marmon car. Balance due, $1,748; the same to be paid on or before Monday, June 8, 1908. Ure agrees to give one free ride, say Sunday, June 7th," was clearly intended to evidence ownership and right of possession in Ure, and clothed him with at least equi-

table ownership and gave him capacity to make a valid chattel mortgage of the car, good as against any one not having a superior lien to the knowledge, actual or constructive, of the mortgagee.

2. Mere inaccuracies in the description of property covered by a chattel mortgage are not fatal if the subject is so described that it can be readily identified by the exercise of ordinary care, or even by the aid of extrinsic evidence, where there is sufficient in the writing to put one acting reasonably on inquiry.

3. Thus, where the mortgagor had but one automobile, a chattel mortgage thereof stating correctly the manufacturer's name and the serial number of the car was valid, notwithstanding the description was not in other respects wholly accurate, and when such mortgage was filed the mortgagor's vendor (who had not been fully paid and who claimed that the title remained in him as security) was chargeable with notice of its contents and was at least put upon inquiry as to the identity of the car so mortgaged.

4. Such mortgagor having, as provided in the mortgage, been permitted to remain in possession of the car, a garage keeper who stored it for him acquired no lien for such storage as against the mortgagee, even though the latter knew that the mortgagor was keeping the car in a public garage; and the vendor of the mortgagor acquired no such lien by paying the storage claim.

5. Where a chattel mortgage is given, either in the form of a bill of sale or in the ordinary form, without anything being said as to possession pending maturity of the debt, the mortgagee, in the absence of any statutory regulation to the contrary, may exercise his own discretion as to taking possession of the property; and when the mortgagor, being permitted to retain possession for a particular purpose only, abandons such purpose and the property, the mortgagee as holder of the legal title may take the property.

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Affirmed.*

Action to recover possession of an automobile.

The cause was tried by the court. The evidence was to this effect: June 2, 1908, Byron R. Godfrey, then owner of the property in controversy, gave to one John Ure, Jr., a signed paper worded thus: "June 2, 1908, Received of John Ure

the sum of $2 to apply on Marmon car.     Balance due,
$1,748; the same to be paid on or before Monday, June 8,
1908.     Ure agrees to give one free ride, say Sunday, June
7th."     The car was kept by Godfrey in a public garage.     Ure
did not change the actual situation for some days later.     On
the day the paper was delivered Ure made a bill of sale, which
was duly filed as a chattel mortgage, intending to convey the
automobile to one *Adler* to secure him for indorsing a note
which the latter desired to use to obtain money to pay God-
frey.     He thereby raised $1,750, and paid $1,500 to God-
frey June 6th thereafter.     The bill of sale provided for re-
tention of the car by Ure as a demonstrator.     The description
of the property in the paper given by Godfrey to Ure was
not identical with that in the bill of sale, but the serial num-
ber and manufacturer's name in the two papers were the
same.     On payment of the $1,500 being made to Godfrey he
took the car from the garage and used it as he saw fit.     When
not in use he kept it in the White garage until some time in
March, 1909, and Godfrey received word from the White
people that there was a storage bill of $65 against it and that
it would be sold therefor unless otherwise paid.     There was
still due Godfrey on the car $250.     He claimed the right to
take it under a paper he gave Ure when the $1,500 was paid,
stipulating that the latter should have possession of the car,
but title should remain in the former as security for unpaid
purchase money.     Godfrey paid the garage people the claim
of $65 and took the car without permission of Ure.     He
used it several months, making some improvements thereon,
and then it was taken in this action.     In due course, he re-
gained possession with the right to retain it pending termina-
tion of the litigation.     Later he died and his personal repre-
sentative was substituted as defendant.     The car was worth
around $1,700 when purchased by Ure and $1,100 when re-
plevined.     It was returned to plaintiff before trial without
prejudice.

The court found that plaintiff, at the commencement of the action, was the owner and entitled to possession of the automobile under his bill of sale; that the value thereof when replevined was $1,100 and use $200, and ordered judgment against the personal representative of Godfrey, deceased, and the sureties on his undertaking for the $200, and costs. Judgment was so rendered.

For the appellant the cause was submitted on the brief of *E. J. Henning.*

*William Kaumheimer,* for the respondent.

MARSHALL, J. Counsel for appellant contends that *Adler's* mortgage did not vest in him any interest because the automobile was not in Ure's possession when the instrument was made. To support that counsel invoke the principle that, in the circumstances assumed, there is no implied warranty of title. The infirmity is in that the premises do not fit this case; so the reasoning and conclusions do not.

This is not a case resting on warranty of title, nor even one of mortgaging after-acquired property. At the best for respondent, Ure had an equitable right to the property as soon as he obtained the memorandum on June 2, 1908. It may be the parties contemplated that, later, some more formal instrument would be made. That it was intended the memorandum, in practical effect and to all appearances, should evidence ownership of the property in Ure, is evident because the paper, on its face, indicates that Godfrey purposes having the garage keeper recognize the former as having the right to take the automobile. Time was given Ure to pay the balance, and it was stipulated that Ure should, in the meantime, afford Godfrey a free ride. That clearly indicates mutual intention that Ure should, from the date of the paper, be considered the actual or constructive possessor of the property. Certainly if the first paper did not clothe him with the full, it did with the equitable, ownership and am-

ple capacity to make a valid chattel mortgage, good as against any one not having a superior lien, to the knowledge, actual or constructive, of the mortgagee.

The further point is made that the mortgage was ineffective as security, because it did not contain a correct description of the machine. Counsel make the mistake, not infrequently observed, of citing foreign cases on a simple matter which has been treated in this court time and again. A single decision in our own jurisdiction, in respect to a particular matter, which has stood as the law of the state for a long time, is better than a large number of foreign adjudications which are more or less in conflict therewith.

Mere inaccuracies in the description of property covered in a chattel mortgage are not fatal, if the subject is so described that it can be readily identified by the exercise of ordinary care, and even by the aid of extrinsic evidence, in case there is sufficient in the writing to put one, acting reasonably, on inquiry. *Newman v. Tymeson,* 13 Wis. 172; *Weber v. Illing,* 66 Wis. 79, 27 N. W. 834; *Harris v. Kennedy,* 48 Wis. 500, 4 N. W. 651; *Knapp, Stout & Co. Co. v. Deitz,* 64 Wis. 31, 24 N. W. 471.

An examination of the cited cases will show how useless it is to refer to authority elsewhere in support of the idea that strict accuracy of description is essential to the validity of a chattel mortgage. The rule of reasonable certainty was early adopted, and also the rule that ambiguity which arises by attempting to apply the description to the thing reasonably supposed to have been intended, may be helped out by extrinsic evidence.

In this case, Ure had but one automobile when he made the paper to *Adler.* The identification number thereof was "Serial No. 17003," and it was a Marmon car. That it was the machine which Ure intended to give, and *Adler* intended to take, security on, there is no manner of doubt. Godfrey was not misled in any way. He must be held to have had

notice of the contents of the paper on file. If that were not sufficient on mere inspection to satisfy him the particular machine was intended, it was certainly enough to put him on such inquiry as would readily have cleared up all doubt about the matter.

A third claim is made that Godfrey became subrogated to the garage keeper's lien for storage and entitled to possession of the property on that account. How Godfrey by stepping into the shoes of Ure and paying off the garage bill could acquire a right superior to the paramount title in *Adler,* is not perceived. The fact that a mortgagor is permitted to remain in possession of the mortgaged property, in the absence of a statute providing otherwise, affords him no implied authority to create a lien thereon for storage superior to the right of the mortgagee. If the garage keeper had no right of lien as against *Adler,* obviously, Godfrey did not obtain any by paying the storage claim. He obtained thereby just what the garage keeper had,—no more and no less. That was a lien as against Ure. Counsel assumes that the lien of the garage keeper took precedence of *Adler's* lien, because the latter had knowledge that Ure was keeping the machine in a public garage. The law is otherwise. Jones, Chat. Mortg. § 472; 7 Cyc. 39, sub. 5.

The further point is made that the chattel mortgage was, in form, a bill of sale, reserving to Mr. Ure the right of possession to enable him to use the machine as a demonstrator, and, therefore, *Adler* had no right to possession when the action was commenced. Little time need be spent with that. The idea that because the bill of sale did not give *Adler,* expressly, the right to preserve his security by taking possession of the machine when necessary therefor, as in this case, is quite novel and is unsound. When Ure abandoned the use for which he was permitted to possess the machine, omitted to pay the garage keeper, and some one had to interfere in order to have the property even housed, his right to posses-

sion was, necessarily, waived in favor of the owner of the paramount claim. Godfrey did not acquire any better right than Ure by interfering to protect his own interests. By common law and common sense, if one person has the title to a chattel and, contingently, to possession thereof, and the latter right is, subject to the contingency, in another, especially when such other is in duty bound to care for the property in the meantime, and he abandons his right, the chattel does not become a thing which a stranger may seize upon, but such right lapses or merges in the paramount right. The mere fact that there was no express stipulation as regards *Adler* taking possession, is unimportant. If a chattel mortgage is given in the form of a bill of sale, or in the ordinary mortgage form, without anything being said about possession pending maturity of the debt, in the absence of a statutory regulation to the contrary, the mortgagee may exercise his own discretion as to taking possession of the property. *Tenney v. State Bank,* 20 Wis. 152; *Appleton I. Co. v. British Am. A. Co.* 46 Wis. 23, 1 N. W. 9, 50 N. W. 1100. Obviously, when the mortgagor is permitted to retain possession for a particular purpose only, and abandons such purpose and, particularly, the property itself, the holder of the legal title may take such property.

There is no other question raised by appellant which seems worthy of mention.

*By the Court.*—The judgment is affirmed.