PARKER-HARRIS Co. *v.* T. G. TATE, Sheriff.

(*Jackson.* April Term, 1916.)

1. **LIENS.. Conditional sales. Lien for automobile injury. Priorities.. "Deodand."**

The lien on an automobile, given by Laws 1905, ch. 173, sec. 5, to a person injured thereby in collision, is inferior to a conditional vendor's rights therein fixed before the collision, and only the interest of the vendee is subject to such lien; and the doctrine of *"deodand"* (by which is meant the forfeiture of a personal chattel, animate or inanimate, becoming the immediate instrument causing death) does not apply, especially in view of Const. art. 1, sec. 12, providing that "if any person be killed by casualty, there shall be no forfeiture in consequence thereof;" and since the legislative policy has been consistently to protect the lien for the price. (*Post, pp.* 511-516.)

Acts cited and construed:   Acts 1905, ch. 173.

Cases cited and approved:   Leach v. Asman, 130 Tenn., 510; Newbrand v. Kraft, L. R. A. 1915D, 693.

Constitution cited and construed:   Art. 1, sec. 12.

2. **LIENS. Statutory. Priorities.**

A lien created by statute does not take precedence of a prior contractual lien, unless such is the clear intention of the statute, even when the statutory lien is for work done on or to the betterment of the property in question. (*Post, pp.* 516, 517.)

Cases cited and approved:   Wilson v. Donaldson, 121 Cal., 8; Adler v. Godfrey, 153 Wis., 186; Reeves & Co. v. Russell, 28 N. D., 265; Shaw v. Webb, 131 Tenn., 173; Horace Waters Co. v. Gerard, 189 N. Y., 302.

3. **LIENS. Statutory.**

A statutory lien has only such force as the statute gives it, and the superseding or subordinating of an earlier lien, by the

Parker-Harris Co. v. Tate.

statute creating a lien, should not easily be inferred, especially where the statutory lien is not awarded for service adding value to or preserving the property in question. (*Post, pp.* 517, 518.)

Cases cited and approved: Hanch v. Ripley, 127 Ind., 151; McDaniel v. Osborn, 166 Ind., 1.

4. **LIENS. Priorities.**
In the absence of express statute to the contrary, liens take precedence in the order of time. (*Post, pp.* 518-520.)

Acts cited and construed: Acts 1897, ch. 78.

Case cited and distinguished: Des Moines Brick Co. v. Smith, 108 Iowa, 307.

Code cited and construed: Secs. 3533, 3536, 3569, 3585.

5. **LIENS. Statutes. Construction. "Owner."**
Where the same word used in a statute more than once, and the meaning is clear at one place, it will ordinarily be construed to have that meaning elsewhere in the act, and the word "owner," as used in Laws 1905, ch. 173, refers to the conditional vendee who has control and use of the automobile, and not to the conditional vendor. (*Post, pp.* 520-522.)

Cases cited and approved: Bank v. Vandyck, 51 Tenn., 617; Marion Mfg. Co. v. Buchanan, 118 Tenn., 238; Lehman v. Ferrell, 71 Ala., 458; Montgomery v. Rich, 3 Tenn. Ch., 660; Pierce v. Lawrence, 84 Tenn., 572.

Cases cited and distinguished: Daugherty v. Thomas, 174 Mich., 371; Samson v. Aitchison, (1912), A. C., 844; Wynne v. Dalby, 30 Ont., 67; Goff v. Byers, 70 Neb., 1; Waggoner v. St. John, 57 Tenn., 503.

---

FROM SHELBY

---

Appeal from the Circuit Court of Shelby County— H. W. LAUGHLIN, Judge.

Parker-Harris Co. v. Tate.

BACON & STICKLEY, for appellant.

BELL, TERRY & BELL, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

The sole question for determination is one of law: Is the lien on an automobile, given by Acts 1905, chapter, 173, to the person injured thereby in a collision, superior to the rights of the conditional vendor of the machine fixed at a date prior to the infliction of the injuries but after the passage of the legislative act?

The court of civil appeals has answered in favor of the claim of the person injured. We hold to the contrary.

The case was tried in the court below on an agreed statement of facts which, in substance, was:

The plaintiff company is an automobile dealer in Memphis, and sold to one Richardson a machine for which the latter paid part cash and executed notes to represent the remainder, title to the automobile being retained by the vendor by a provision in the face of the note.

Later, while driving the automobile, Richardson ran over and killed a little negro boy, whose administrator brought suit against Richardson to recover damages for the death. An attachment was issued and levied on the car under the provisions of the above act. The vendor company instituted this, a replevin suit, against the sheriff who had levied the writ of attachment; and

it claimed the right of possession by reason of the title so retained by it.

The automobile act, above referred to, after requiring owners of cars to register and number the same and regulating the speed and operation thereof, sets out in section 5 as follows:

"That whenever any suit for damages is brought in any court for injuries to persons or property caused by the running of any automobile in willful violation of the provisions of this act, there shall be a lien upon such automobile for the satisfaction of such recovery as the court may award whether, at the time of the injury, such automobile was driven by the owner thereof or by his chauffer, agent, employee, servant, or any other person using the same by loan, hire, or otherwise."

The court of civil appeals proceeds as it states on the assumption that automobiles are dangerous instrumentalities. We have held that they are not to be classed with instrumentalities that are inherently dangerous. *Leach* v. *Asman,* 130 Tenn., 510, 172 S. W., 303, and authorities cited; and note to *Neubrand* v. *Kraft,* L. R. A., 1915D, 693, where numerous cases are collected.

We understand the statute to go upon the idea that these cars are not such instrumentalities, and therefore it merely denounces misuse or negligence in their operation. When there is a willful violation of the provisions of the statute, injuries are contemplated to accrue for which a recovery may be had. The legisla-

ture dealt with an instrumentality capable of producing harm when negligently operated; it therefore saw fit, and competently and properly, to regulate their operation.

The court of civil appeals, passing to a consideration of the claim of administrator to priority over the conditional vendor, refers for justification of its ruling to that doctrine of the common law, as administered in England, known as the doctrine of *deodand*. That court thus states the position:

"The legislators intended to make the claim of the injured one superior to that of any other person who asserts a lien or a charge, and that the claim of the injured one should be enforced against any owner who in any manner consented that the one who inflicts a harm might use the machine. It is clear that this was the legislative design. Did the legislature when it so provided go beyond any recognized principle of jurisprudence or of legislation? We can best answer this question by tracing the history and development of the idea of responsibility for injuries done by dangerous or *quasi* dangerous instrumentalities. This is known as the doctrine of *deodand*. Practical lawyers may scorn this method of treating of intricate questions if they want to. We are persuaded that this is the only broad, logical, and jurisprudential way of solving propositions that are now in the realm of debate. Analogy is still the great light, and history is a luminary of almost equal force. And it must not be forgotten that numberless rules of the ancient common

135 Tenn.—33

law are operative to-day, and that juridical concepts are so persistent as to come to life and illuminate questions arising in ages far distant from their origin."

A *"deodand"* (a thing forfeited to God) was any personal chattel whatever, animate or inanimate, which, becoming the immediate instrument by which the death of a human creature was caused, was forfeited to the king, for sale and a distribution of the proceeds in alms to the poor by his high almoner, "for the appeasing of God's wrath," says Coke. At the base of the doctrine was superstition—the implication that the cart or the ox drawing it, for example, was morally affected from having caused the death. So far was this the case that Blackstone says that the forfeiture applied, even though the offending cart belonged to the person killed. 1 Blacks. Com., 301; Holmes, Common Law, 24; 2 Pollock & Mait., History of English Law (2d Ed.), 473.

The doctrine fitly belonged to an age in which an action for a death negligently or tortiously caused was not permitted against the culpable person of true moral responsibility. If, however, that person's vehicle was, though inanimate, the occasion of his own death, it was a *deodand* for pious uses. Needless to say, historians record that the "pious uses" under the control of the king and his almoner became a scandal which moderns would describe as being graft.

The doctrine, after being subtly refined and pared down, was discarded in England by Stat. 9 and 10, Victoria, Chapter 62. To the credit of American jurispru-

dence, from the outset the doctrine was deemed to be so repugnant to our ideas of justice as not to be included as a part of the common law of this country.

In this State, we have a positive denunciation of its principle firmly embedded in the fundamental law. The Constitution of 1870 provides:

"No corruption of blood or forfeiture of estates; no *deodands.*—That no conviction shall work corruption of blood or forfeiture of estate. The estate of such persons as shall destroy their own lives shall descend or vest as in the case of natural death. If any person be killed by casualty, there shall be no forfeiture in consequence thereof." Article 1, section, 12.

We are at a loss to understand why a doctrine, so discarded and dénounced, was thought to buttress, by analogy or otherwise, the position so taken; and we are at an equal loss to understand how it sheds light on the law of dangerous instrumentalities when the less harmful were equally included for forfeiture under the doctrine referred to. The doctrine of *deodand* did not at all proceed upon the basis of the instrumentality being a dangerous one. Besides the statute here under review is not one that undertakes to provide for a forfeiture of the thing—the automobile—dangerous or not. Its plain meaning is that for damages (not measured by the value of the machine) consequent on negligence or willful violation of its provisions, an action lies.

In our view the question is capable of solution by a resort to rules that are fairly familiar, and certainly more obviously applicable.

It should be noted at the outset that we are not concerned here with the serious question of the power of the legislature constitutionally to enact a statute providing for such a lien in favor of the person injured, which lien might be made to attach to an automobile, or other vehicle, in disregard of the interests of previous lienors. We say serious because of the fact that the vehicle in question was not harmful or noxious *per se,* so as to require its suppression or destruction to remove a danger imminent from its very existence. It might with no inconsiderable reason be urged that the only right under the police power was one to regulate by way of punishment the owner in possession and dominion and control for an unlawful use of that which was designed for a legitimate use.

What we have to deal with is the construction of the act in respect of a claim that such prior lienor's interests have been disregarded.

The lien in behalf of the one injured or of the estate of the one killed is of statutory creation. A right to it did not exist before the particular act was passed. By a long line of decisions where a statute creates a lien that lien as contradistinguished from a common-law lien, is held not to take precedence of a prior contractual lien where the creating statute does not clearly show or declare an intention to cause the statutory lien to override the earlier one. This is true even where the statutory lien is one that arises for work done on, and to the betterment of, the property in question. *Wilson* v. *Donaldson,* 121 Cal., 8, 56 Pac., 404,

Parker-Harris Co. v. Tate.

43 L. R. A., 524, 66 Am. St. Rep., 17; *Adler* v. *Godfrey,*
153 Wis., 186, 140 N. W., 1115; *Reeves & Co.* v. *Russell,*
28 N. D., 265, 148 N. W., 654, L. R. A., 1915D, 1149, and
cases cited in annotation at page 1154; *Shaw* v. *Webb.*
131 Tenn., 173, 174 S. W., 273, L. R. A., 1915D, 1141,
Ann. Cas., 1916A, 626, and cases cited.

A common-law lien does not, of course, lose its dig-
nity in this particular respect by reason of the fact that
it had been codified or redeclared in statutory form.
It is none the less one of common-law origin.

The Court of Appeals of New York holds the same
view, and further conceived that a legislative act which
redeclares a common-law lien and undertakes to make
it superior to a lien previously fixed may be constitu-
tional; whereas, it would be unconstitutional if a lien
of statutory creation was attempted to be given prior-
ity.   In the first case there would, it holds, be no de-
nial of due process of law and no opposition to "the
law of the land."   This for reason that such a common-
law lien was itself a part of the law of the land before
the first Constitution of that State was adopted, and
has, it conceives, a higher *status* than a mere statutory
lien. *Horace Waters Co.* v. *Gerard,* 189 N. Y., 302,
82 N. E., 143, 24 L. R. A. (N. S.), 958, 121 Am. St. Rep.,
886, 12 Ann. Cas., 397.

When a lien comes into existence by force of a sta-
tute, it must be measured by the statute, and can have
no greater force than the statute gives it.   If the leg-
islature manifests no intention of giving it superiority
over other liens, it can have none. *Wilson* v. *Donald-*

*son,* supra, and cases cited; *Hanch* v. *Ripley,* 127 Ind., 151, 26 N. E., 70, 11 L. R. A., 61; Jones, Liens, section 691.

The act creating the lien should be specific in declaring the fact, as well as the nature and extent of the lien and not leave the superseding or subordinating of an earlier lien to inference. *McDaniel* v. *Osborn,* 166 Ind., 1, 75 N. E., 647, 2 L. R. A. (N. S.), 615, 618, 117 Am. St. Rep., 354; Jones, Chattel Mort. section 474. Particularly should this be true where, as in this case, the lien is not awarded for any service that adds value or that preserves the property on which the earlier lien rests, and where it may be held that there was a benefit accruing.

The true rule was tersely stated in *Des Moines Brick Co.* v. *Smith,* 108 Iowa, 307, 79 N. W., 77:

"The contention of plaintiff is that its later lien supercedes the other. The rule, in the absence of statutory provision to the contrary, is that liens take precedence in the order of time; the first in point of time being superior. The only exception to this that we now recall is a bottomry bond, and it is expressly recognized by text-writers as differing in this respect from all other common-law liens. 3 Kent, Comm. 437. This order of priority will not be disturbed or altered, unless expressly provided by statute."

Our own act of 1897, chapter 78, which gives to employees of corporations and corpartnerships a lien upon the property of the corporation or firm in event of insolvency, is made thus specific in setting out that

"such lien shall prevail over all other liens," except those of a certain class of mortgages presently to be noted. Other instances of declarations of such priority in terms are to be found: Code Shannon, sections 3533, 3536 (mechanic's lien over vendor's lien, conditionally); 3569 (farm laborer's lien); 3585 (railroad contractors over mortgage liens and all others).

Looking further into the legislative policy of this State, we find that it has been consistent on the point of protecting the lien for purchase money. Even the Constitution makes the favored right of homestead subordinate to the vendor's lien; the mechanic's lien for improvements made on property is secondary to the vendor's lien except on the vendor's acquiescence after notice. In the act of 1897, which has been referred to immediately above, the lien of the employees is by express exception made secondary to "the vendor's lien or the lien of a mortgage or deed of trust to secure purchase money." Had it been the intention of the legislature to subordinate or subject the rights of the conditional seller (as lienor) in such an automobile, it knew how to clothe the purpose in adequate words. In the light of local legislative history, we feel assured that it would not have left its intent to inference.

The "owner" mentioned in the fifth section of the act, quoted above, is the same "owner" who by the terms of an earlier section is required to register his car, giving his name and street address. A new owner, on a transfer of the car, it is provided, shall take

out a certificate.   The conditional seller is not then the owner within the meaning of that word so used.

It is a rule of statutory construction that where the same word is used in a statute more than once, and the meaning is clear at one place, it will ordinarily be construed to have that meaning elsewhere in the act. 2 Lewis' Suth. Stat. Constr. (2d Ed.), p. 758.

In *Daugherty* v. *Thomas,* 174 Mich., 371, 140 N. W., 615, 45 L. R. A. (N. S.), 699, Ann. Cas., 1915A, 1163, the court defined the word "owner" in an automobile statute.   There the effort of a litigant was to restrict the meaning of the word, while here it is to enlarge it. The court said:

"We hardly need quote authorities to the effect that the owner of the property is the one who has dominion over it, and has a right to enjoy and do with it as he pleases, unless he is prevented by some contract or law which restrains his rights."

As said by Lord Atkinson in a recent case (*Samson* v. *Aitchison*, [1912] A. C., 844):

"The duty to control postulates the existence of the right to control.   If there is no right to control there con be no duty to control."

A Canadian case called for the construction of an act in respect to who was the "owner" of an automobile responsible for the violation of a legislative act. The court said:

"The purpose of section 19 was to render the person having dominion over the vehicle, and in that sense the owner of it, answerable for any violation in the com-

mission of which the vehicle was the instrument, by whomsoever it might be driven; and I do not think that it can have been intended to fix the very serious responsiblity, which the section imposes upon one who, like the respondent, at the time the accident happened, had neither the possession of, nor the dominion over, the vehicle, although he may have been technically the owner of it in the sense in which the owner of the legal estate in the land is the owner of land." *Wynne* v. *Dalby,* 30 Ontario, 67.

It has been clearly pointed out by this court where a sale had been made with title retained in the vendor that "the possession, use and profits of the property had passed from the vendor to the purchaser; the vendor was not authorized to exercise any act of ownership or control." over the property (*Bank* v. *Vandyck,* 4 Heisk. [51 Tenn.], 617); and that the property had passed under the dominion and control of the vendee, and so far forth that he would be liable on the purchase-money note notwithstanding loss or destruction of the property. *Marion Mfg. Co.* v. *Buchanan,* 118 Tenn., 238, 99 S. W., 984, 8 L. R. A. (N. S.), 590, 12 Ann. Cas., 707.

The governing principle was applied in a case decided by the supreme court of Nebraska (*Goff* v. *Byers,* 70 Neb., 1, 96 N. W., 1037), which involved a lien declared by statute in favor of the owner of cultivated land on trespassing animals for damages done by such animals, and a claim of priority for it over the antedating lien of a mortgage. The legislative act pro-

vided that the person whose property was damaged
·should have a lien upon the trespassing animals for the
full amount of damages and costs, and contained no
express provision giving it preference over other liens.

"The statutory lien is given to the person·injured to
enable him to obtain satisfaction from the person
through whose fault or omission of duty the injury was
occasioned. A mortgagee without possession could
not, of course, be sued in a case of this kind, and it
would be an anomaly in the law, if his property could be
taken for the satisfaction of a claim upon which he was
not personally liable. Under the statute of Alabama
giving a lien for damages upon trespassing stock, it was
held that the statutory lien was subordinate to the lien
of a prior mortgage executed by the owner. The court
in *Lehman* v. *Ferrell,* 71 Ala., 458, said: 'We think
the lien the statute gives on the stock doing damage can
only be commensurate with the ownership of the person
by whose voluntary permission the stock runs at large.
Ballard was the person sued. . . . The lien can
only extend to such title and interest as he was the
owner of.' "

We therefore are of opinion that only the interest
of the vendee, as the owner of the automobile, was lia-
ble to be attached and subjected. The meaning of sec-
tion 5 of the statute is that there shall be a lien upon
such automobile if driven at the time of the injury by
such owner, or any one driving it under him—that is,
under him as the one exercising dominion over it—
whether it be his chauffeur or servant, or one in charge

under a contract of bailment or hire.   The last clause, ''or any other person using the same by loan, hire or otherwise,'' was meant to cover broadly an arrangement by which the owner, such as the keeper of a garage, who, exercising his power of control, permits the driver of the machine to run it.   The spirit of the provision is to subject that which is owned by him who has it in his own power to select the agency by which the machine is propelled or to be propelled.   As we have seen this is the conditional vendee.  The statute does not operate a forfeiture or subjection of the interest of one who has it not in his power to protect his interest by any exercise of discretion as to the movements of the machine, or as to who shall move it.

The court of civil appeals refers throughout its opinion to cases in admirality where vessels in collision are proceeded against *in rem* and subjected regardless of the rights of prior mortgagees or lienors.   In such cases, however, the procedure is not according to the common law, but to that part of the civil law system that has been moulded into what is termed the maritime law.   However, in such cases, also, the rule appears to be, in accord with what has been noted, that:

''A forfeiture for violation of a statute does not affect liens acquired prior to the illegal act.'' 26 Cyc., 798, and cases cited.

We think it clear that the statute under review does not undertake to provide for a proceeding *in rem*— against the automobile as the *res*.   As was said in respect of another of our lien statutes provided to be enforced by attachment:

"The Code however, in its provisions, seems evidently, as we think, to contemplate not only that the owner or owners should be parties, but that they should be defendants to the suit in the precise sense in which parties are defendants in other like cases of enforcement of debts. . . . It is not a proceeding *in rem*, in which the vessel is defendant." *Waggoner* v. *St. John*, 10 Heisk. (57 Tenn.), 503.

And see *Montgomery* v. *Rich*, 3 Tenn. Ch., 660; *Pierce* v. *Lawrence*, 16 Lea (84 Tenn.), 572, 1 S. W., 204.

Believing that the statute and the rights of the petitioner have been misconceived, the judgment of the court of civil appeals is reversed, and the cause is remanded to the circuit court for further proceedings. Costs of the appeal will be paid by respondent.

SWIGGART, Special Judge, dissents.