In re CENTRAL WISCONSIN AG SUPPLY, INC., Debtor.

P.A.G. GARDEN PRAIRIE, INC., Plaintiff-Appellant,

v.

CENTRAL WISCONSIN AG SUPPLY, INC., Farmers & Merchants Union Bank, Royster Company, Grower Service Corp., Terra Chemicals International, Inc., Ottawa Strong & Strong, Inc., and Ronald B. Paskin, Trustee, Defendants-Appellees.

Bankruptcy No. 83–C–783–S.
Adv. Pro. No. 83–0040.

United States District Court, W.D. Wisconsin.

Dec. 6, 1983.
As Changed Jan. 10, 1984.

Denis Bartell, Ross & Stevens, S.C., Madison, Wis., for P.A.G. Garden Prairie, Inc.

Leslie Brodhead Griffith, Ross & Chatterton, Madison, Wis., for Ottawa, Strong & Strong, Inc.

Jack Aulik, Aulik, Brill & Eustice, S.C., Sun Prairie, Wis., for Terra Chemicals International.

William J. Rameker, Murphy, Stolper, Brewster & Desmond, Madison, Wis., for Central Wisconsin Ag.

Randall Lueders, Behl & Lueders, Columbus, Wis., for Farmers & Merchants Union Bank.

Michael E. Skindrud, LaFollette, Sinykin, Anderson & Munson, Madison, Wis., for Royster Company.

Michael P. Erhard, Foley & Lardner, Madison, Wis., for Grower Service Corporation.

Ronald B. Paskin, Paskin & Kepler, Madison, Wis., trustee.

## MEMORANDUM AND ORDER

JOHN C. SHABAZ, Bankruptcy Judge.

This appeal from the decision of the Bankruptcy Court of the Western District of Wisconsin in an adversary proceeding presents a very narrow question. That question is whether a financing statement filed by a creditor which fails to specify the corporate character of the debtor and which uses an address of the debtor which is different from the debtor's business address is "seriously misleading" within the meaning of § 9–402(8) of the Uniform Commercial Code (Wis.Stats. § 409.402(8)). The Bankruptcy Court, Judge Robert Martin presiding, answered in the affirmative by memorandum decision dated July 12, 1983, 31 B.R. 479.

The basic facts of this case appear to be undisputed and are as follows:

### FACTS

Plaintiff P.A.G. Garden Prairie, Inc. is a supplier of agricultural supplies. P.A.G. entered into a contract with the debtor, Central Wisconsin Ag Supply, Inc., to sell the debtor certain agricultural supplies and chemicals on November 29, 1979. At the same time, the parties signed a security agreement granting P.A.G. a security inter-

est in the debtor's accounts receivable and inventory.

P.A.G. filed a financing statement with the Wisconsin Secretary of State on January 23, 1980, the statement naming "Central Wisconsin Ag Supply Co." as the debtor and listed the address as "1420 Elizabeth Street, P.O. Box 257, Baraboo, Wisconsin, 53913." The correct name of the debtor is "Central Wisconsin Ag Supply, Inc." Its business address is in Astico, Wisconsin, in Dodge County, some forty miles from Baraboo, which is in Sauk County. Columbia County lies between the two. The officers of the corporation, Eugene and Nancy Stouffer, live at the Baraboo address, and that address is the registered office of the corporation under Wis.Stats. § 180.09. Eugene Stouffer signed the financing statement as representative of the debtor.

On December 29, 1980, Farmers and Merchants Union Bank of Columbus, Wisconsin, filed a financing statement correctly designating debtor and using the Baraboo address. The bank is the debtor's depository.

In April of 1982, Terra Chemicals International Inc. filed financing statements naming the debtor as "Central Wis. Ag Supply, Inc." and using the Astico address. Also in April, 1982, Grower Service Corp. filed a financing statement correctly naming the debtor and using the Astico address.

In September, 1982, Royster Company, Ottawa Strong & Strong, Inc. and, again, Terra Chemicals, filed financing statements, all using the Astico address. Royster correctly named the debtor. Terra again abbreviated Wisconsin in the debtor's name. Ottawa identified the debtor as "Central Wisconsin Ag Supply."

All parties filed their financing statements with the Wisconsin Secretary of State, the proper office under Wis.Stats. 409.401(1)(c). One other filing, concerning a party not interested in this action, was made by Allis-Chalmers Corporation in

April, 1980. The debtor was designated "Central Wis. Ag. Supply, Inc.," and the Astico address was used.

The office of the Secretary of State maintains an index of filed financial statements which is updated monthly. The index lists the filings by debtors' names alphabetically. In December, 1980, the index listed the liens of both P.A.G. and Allis-Chalmers, P.A.G.'s "Central Wisconsin Ag Supply Co." following fourth after Allis-Chalmer's "Central Wis. Ag Supply, Inc."

In April, 1982, Farmers & Merchants Bank's listing with the correct name and the Baraboo address followed directly the listing of P.A.G. Allis-Chalmers' listing was listed on the previous page of the index, nine other filings against other debtors following before P.A.G.'s appeared. In September, 1982, the index listed consecutively the filings of P.A.G., Grower Service and the bank. Grower Service used the correct name and the Astico address. Terra Chemicals' filing appeared after that of Allis-Chalmers on a previous page, with ten names between Terra and P.A.G.

After all parties had filed financing statements, the filing of Allis-Chalmers and that of Terra appeared together, each having used the abbreviation for Wisconsin. The remainder of the filings appeared consecutively further along in the index, P.A.G.'s appearing third of the six.

At trial,[1] a representative of the Secretary of State's office explained the process of responding to requests for lien searches. She explained that requests are made both in writing and orally. A written report will include all filings against a particular debtor, disregarding the type of corporate designation used (such as "Inc.," "Corp.," "Ltd.," etc.) but will not include name variances nor filings against noncorporate entities (assuming that the request was for a corporate debtor). However, a listing with name variances, including noncorporate entities

---

1. By inclusion of this paragraph, the Court is not indulging in factfinding in addition to that performed by the Bankruptcy Court (although it would be allowed under the Emergency Rule). Rather, the Court is attempting to provide foundation for the meaning of the documents which were accepted into evidence through the witness' testimony. The Court does not accept as true the witness' opinion.

with the same name will be attached to the list. The attached sheet is called a "green sheet." An oral request will have the same information conveyed except that variations (presumably anything that would appear on the green sheet) will be given orally unless the requesting party cannot be reached, in which case that information is sent in written form.

A lien search prepared by Dane County Title Company for the Farmers & Merchants Bank in August, 1980, for liens against "Central Wisconsin Ag Supply, Inc." included that of P.A.G. A lien search prepared by the Secretary of State's office prepared for Grower Service in May, 1982, listed four of the five then existing liens, missing that of P.A.G. However, the search referenced a green sheet which was not in evidence.

Terra requested two reports of the Secretary of State's office, both on the same day, October 6, 1982. The first, requested of "Central Wisconsin Ag Supply, Inc.," did not list P.A.G. The second, requested of "Central Wisconsin Ag Supply Co.," did list P.A.G.

A series of reports were requested from Dun & Bradstreet by Terra and Royster at various times. Six reports between August, 1980 and February, 1982 failed to turn up any filed liens despite the fact that as many as three filings were then extant: P.A.G.'s with the incorrect business designation and the Baraboo address; Allis-Chalmers', whose filing abbreviated Wisconsin and used the Astico address; and Farmer's & Merchants Bank, which used the Baraboo address. A report in July, 1982 showed only the filing of Terra, despite the fact that Grower Service had joined the list by that time. Terra's filing, which did appear on Dun & Bradstreet's report, was identical to that of Allis-Chalmers, which did not, except that Allis-Chalmers' filing included a highway address, which was not in the filing of Terra. Finally, in August, 1982, a report was issued showing only the filings of Terra and Grower Service.

## MEMORANDUM

Preliminarily, the Court would note that jurisdiction of this matter is pursuant to 28 U.S.C. § 1334 and pursuant to the Order Adopting Emergency Rule Regarding Bankruptcy Cases and Proceedings, adopted by this Court on December 27, 1982.

The Court also notes that there is some dispute between the parties whether the ultimate determination of the Bankruptcy Court in this matter—that the filing of P.A.G. was "seriously misleading" within the meaning of § 409.402(8), Wis.Stats., is a conclusion of fact or law. The party most vociferously arguing that the determination is a conclusion of law—plaintiff P.A.G.— listed the question as one of contested fact in its pre-trial report to the Bankruptcy Court.

The Court does not believe that an examination of the issue of whether the Bankruptcy Court's finding is one of fact or law will shed much light on how to determine the answer to the question before the Court. The question is whether the financing statement filed by P.A.G. was "seriously misleading." It is undoubtedly one of ultimate fact from which legal consequences flow. However, the term "seriously misleading" is a statutory one which must be assigned some legal meaning.

The Bankruptcy Court determined that the filing of P.A.G. was "seriously misleading" because the combined effect of the errors in both the address and corporate name may lead "a creditor to believe that there were two separate entities, one incorporated operating in Astico, the other unincorporated operating in Baraboo." Memorandum Opinion, Page 5, July 12, 1983.

■ The Court must conclude that the determination of the Bankruptcy Court is incorrect because it strips the word "seriously" of any logical meaning in the context of the statutes. The statutes, in pertinent part, read as follows:

Wis.Stats., § 409.402(1)(a). A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an ad-

dress of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral ...

Wis.Stats., § 409.402(8). A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.

The Court agrees with the commentator who suggests that there are two distinct tests to be met before § 409.402(8) applies. The mistakes must be minor and they must not be seriously misleading. *See* White and Summers, *Uniform Commercial Code 2d,* at 954 (1980).

■ The mistakes here are certainly minor. As it concerns the address, the Court must agree with P.A.G. that there is nothing inherently incorrect about the use of the Baraboo address. Although the Court will assume (despite the absence of testimony in this regard) that the more common and better business practice is to use the debtor's business address, the statute only requires "a mailing address." *See In re Simpson,* 4 UCC 250 (Ref.Dec.W.D.Mich. 1966). Mail would certainly be received by a corporate debtor at the address registered as required under the state's corporate statutes. Even if the address can be considered incorrect in some fashion, the error is certainly minor. The cases differ on whether the total absence of an address is a major error. *Compare In re HGS Technical Associates, Inc.,* 14 UCC 247 (E.D.Tenn.1973) (the omission of the debtor's address is fatal); *Rooney v. Mason,* 394 F.2d 250 (10th Cir.1968) (absence of the addresses of both the debtor and secured party held minor when the addresses are readily available).

The failure of P.A.G. to properly delineate the debtor's corporate status is also minor. A case cited by some of the defendants herein, *General Motors Acceptance Corporation v. Haley,* 329 Mass. 559, 100 N.E.2d 143 (1952), is illustrative. The Court in *GMAC* held that a filing naming the debtor as "E.R. Millen Co." did not perfect

a security interest in E.R. Millen Co., Inc. The official comments of the 1972 Uniform Commercial Code cite this case "[a]s an example of the sort of reasoning which this subsection [9–402(8)] rejects." Such reasoning was described as "fanatical and impossibly refined reading of such statutory requirements." American Law Institute, *Uniform Commercial Code, 1972 Official Text and Comments of Article 9 Secured Transactions,* at page 138.

As the commentators point out,

One should understand why the debtor's name on the financing statement is important and why courts are appropriately concerned about it. The filing officer uses the debtor's name to compose his index and subsequent parties use the index in order to find the filing. If the debtor's name is wrong, the index may be wrong and subsequent parties thus misled.

White and Summers, *supra,* at 956. It is evident to this Court after reviewing the cases cited by the parties and the above quotation that the name variance can be considered a major error only if a reasonably diligent researcher of the files would fail to note the existence of the financial statement filed under the incorrect name. *In re Brawn,* 6 UCCRS 1031 (Bkrtcy., D.Me. 1969) and *John Deere Co. v. William C. Pahl Construction Co.,* 34 App.Div.2d 85, 310 N.Y.S.2d 945 (1970), cited by various defendants, are examples of misspellings which would cause serious mis-indexing, thus making it highly unlikely that the filings would be found. They are inapplicable to this case where, despite the lack of corporate designation, the filing of P.A.G. was indexed squarely among the filings with the correct corporate designation. The filing of one of the defendants here which abbreviated Wisconsin in the debtor's name was far more likely to have been missed by a reasonably diligent researcher.

Therefore, the errors in the filing of P.A.G., if they be errors at all, were minor. The question which now must be answered is whether, despite insignificance of the er-

rors, can the filing be considered seriously misleading to one who has notice of it.

■ It may very well be, as the Bankruptcy Court decided, that a creditor might believe in the existence of two separate entities. However, it is inconceivable that a creditor, with even a modicum of concern for his own security interest, would fail to investigate whether the filing of P.A.G. was against the same debtor. In an abstract sense, it can be granted that a filing showing a different business type at an unfamiliar address might be somewhat misleading. But it certainly cannot be said to be seriously misleading.

First, the lack of "Inc." after a decidedly uncommon business name hardly strikes one as the kind of mistake which would seldom be made. No one in the position of a creditor could conclude that the variation was an uncommon one.

And the address difference, which might be said to add to the confusion, cannot be considered so uncommon as to raise this filing into the class which would be considered seriously misleading. Businesses operate out of more than one address with considerable frequency in this day and age. A business like the one in this case sometimes has warehouses at different locations than its business address.

The ease with which a creditor could have discovered the truth about the filing of P.A.G. is clear. By simply contacting the listed creditor, or even the debtor, any uncertainty would have been cleared up. A check of the financing statement itself would have shown the same debtor signature. A check of the corporation filings in the office of the Secretary of State would have cleared up any doubts raised by the address difference. Finally, any question about whether a reasonable creditor should have investigated P.A.G.'s filing further is dispelled by the fact that the party filing after P.A.G., the bank, correctly named the debtor, but used the same address in Baraboo. Thus, subsequent parties had notice that the variations could be ignored only at their peril.

The lack of precision in financing statements, so clearly evidenced in this case, is well known. This Court will only require precision of a character sufficient to lead others to investigation. The notice function of the statute was fulfilled by the financing statement filed by P.A.G.

Accordingly,

## ORDER

IT IS ORDERED that this case is REVERSED and REMANDED to the Bankruptcy Court for the Western District of Wisconsin for proceedings not inconsistent with this opinion.