**In the Matter of**

**Robert E. GODFREY, Debtor.**

**Michael E. KEPLER, Trustee, Plaintiff,**

v.

**PRODUCTION CREDIT ASSOCIATION OF DODGEVILLE, Defendant.**

Adv. No. 85–0328–7.

United States Bankruptcy Court, W.D. Wisconsin.

March 31, 1986.

Timothy J. Peyton, Madison, Wis., for plaintiff.

Paul F. Angel, Angel & Walker, S.C., Dodgeville, Wis., for defendant.

MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

On July 11, 1985, the debtor, Robert E. Godfrey, filed a chapter 7 petition in bankruptcy and Michael E. Kepler was appointed trustee. On November 12, 1985, the trustee filed this adversary proceeding seeking to avoid the security interest of Production Credit Association of Dodgeville ("PCA") in the debtor's farm machinery. The basis of the trustee's claim is that the financing statement description of the collateral is inadequate and fails to meet the requirements of WIS.STATS. §§ 409.402(1)(a) and 409.110.[1]  If correct

1. WIS.STAT. § 409.402(1)(a) provides:
   A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. A financing statement may be filed before a se-

the trustee as a "lien creditor" may avoid PCA's security interest pursuant to 11 U.S.C. § 544(a)(1) and WIS.STAT. § 409.-301. The parties contend that there are no contested factual issues and that this matter is ripe for decision and summary judgment.

PCA's interest in the debtor's property arises under two security agreements. The first agreement, dated March 23, 1979, grants PCA a security interest in "[a]ll farm equipment now owned or hereafter acquired by Debtor, and all accessions to, and spare and repair parts, special tools and equipment for, such farm equipment." The security agreement also granted a security interest in certain specific items of farm machinery which were listed on an attached exhibit. This farm machinery consisted of the following described items:

2 M.M. Plows

IHC # 56 4 row planter

M Farmall with Ford 2 row mounted picker

801 Ford Diesel

2 elevators

Gehl 600 chopper

Badger blower

3 chopper boxes

The second security agreement, dated February 20, 1981, grants a security interest in "[a]ll equipment, motor vehicles and fixtures, all accessions thereto, and all spare parts and special tools for such equipment."[2]

PCA alleges that the security interest created by the two agreements were perfected by a financing statement filed with the Iowa County Register of Deeds on March 26, 1979, and a continuation statement filed on January 5, 1984. The financing statement describes the subject collateral as simply "Machinery." The financing statement made no mention of any other form of farm equipment nor does it by its terms refer to after-acquired machinery.

The trustee cites *In Re Becker*, 46 B.R. 17 (Bankr.W.D.Wis.1984) and *In Re Mitchell Bros. Const., Inc.*, 52 B.R. 92 (Bankr.W. D.Wis.1985) for the proposition that if the "types" and "items" language of WIS. STAT. § 409.402(1)(a)[3] is to retain any meaning "creditors that rely upon a general financing statement description to protect a limited security interest must not be permitted to stray beyond the generous and broad definitions found within the Uniform Commercial Code." *Becker, supra*, 46 B.R. at 19. It is true that in *Becker* and *Mitchell Brothers* the court stated that "super-generic" descriptions in financing statements are generally inadequate. Thus, *Becker* disallowed that portion of a security interest in which more was claimed in the financing statement than in the security agreement.[4] In *Mitchell Brothers*, however, the court upheld the use of the super-generic description "[a]ll Business Assets now owned or hereafter acquired by the debtor," because the underlying security interest actually did reach all such assets. *Id.*, 52 B.R. at 93. Thus the financing statement description was sufficient to perfect the bank's lien.

Neither *Becker* nor *Mitchell Brothers* is controlling since whatever faults it may have the term "machinery" is not super-generic in the present context. Rather, the opposite problem is presented. The financing statement on its face covers less than what is covered by the underlying security agreements.

In determining the validity of the financing statement the court must acknowledge

curity agreement is made or a security interest otherwise attaches.

WIS.STAT. § 409.110 provides:

For the purposes of this chapter any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described.

**2.** Although this security agreement does not by its terms cover livestock and crops, section 3.2 of the security agreement purports to give the debtor specific permission to sell or lease "[l]ivestock and crops."

**3.** *See* footnote 1.

**4.** The security agreement in *Becker* provided *inter alia* for a security interest in farm equipment, livestock, and farm supplies. The financing statement claimed a security interest in all farm personal property.

234

the very liberal policy which Wisconsin courts have traditionally followed in deciding "sufficiency of description" cases. *See Marathon Finance Corp. v. Rice Lake Auto Co.*, 239 Wis. 201, 1 N.W.2d 81 (1941); *Adler v. Godfrey*, 153 Wis. 186, 140 N.W. 1115 (1913). In *Adler* the court stated that mere inaccuracy in the description of collateral in a chattel mortgage is not fatal if the property is so described that it can be readily identified by the exercise of ordinary care, and by aid of extrinsic evidence, so long as there is sufficient description in the writing to put a third party on inquiry notice. *Adler*, 153 Wis. at 190, 140 N.W. 1115. That this liberal policy continues to be the law in Wisconsin is illustrated by *Milwaukee Mack Sales v. First Wis. National Bank*, 93 Wis.2d 589, 287 N.W.2d 708 (1980), in which the court found that the description "all equipment" contained in a general business security agreement adequately described a certain after-acquired truck owned by the debtor trucking company.

■ This liberal policy is even more applicable to financing statements than to security agreements.

> The requirement of description of collateral (*see* section 9-203 and Comment thereto) is evidentiary. The test of sufficiency of a description laid down by this section is that the description do the job assigned to it—that it make possible the identification of the thing described. Under this rule courts should refuse to follow the holdings, often found in the older chattel mortgage cases, that descriptions are insufficient unless they are of the most exact and detailed nature, the so-called 'serial number' test.

Official U.C.C. Comment, WIS.STATS. ANNO. § 409.110. *See In Re Younce*, 44 B.R. 102, 104 (Bankr.E.D.Wis.1984). *Accord In Re Fuqua*, 461 F.2d 1186, 1187-88 (10th Cir.1972) (Kansas U.C.C. requires a description that will enable a third party by reasonable inquiry suggested by the financing statement to identify the subject property). In *In Re Central Wisconsin Ag Supply, Inc.*, 36 B.R. 908 (W.D.Wis.1983) the court stated:

> The lack of precision in financing statements, so clearly evidenced in this case, is well known. This Court will only require precision of a character sufficient to lead others to investigation.

*Id.* at 913. Thus, the primary function of a financing statement is to provide inquiry notice to third parties.

The items specifically enumerated on page 233, *supra*, are clearly items of machinery covered by the financing statement and PCA's lien on those items may not be avoided. The use of the term "machinery" puts any third party on reasonable notice to make inquiry as to what particular items of machinery are covered and whether after-acquired machinery is covered.

■ The generic term "machinery" is not reasonable notice with respect to any items of collateral, such as tools, which are not fairly encompassed by the term. Such items are not covered by PCA's financing statement, and PCA's lien on those items may be avoided. Thus, summary judgment for PCA may be granted only with respect to the specific pieces of machinery listed on page 233. An evidentiary hearing will be necessary for the court to determine the classification of all other items of collateral.